**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| VACATION RENTAL PARTNERS, LLC; | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. 1:15-cv-10656 |
| | ) | |
| v. | ) | |
| | ) | **Hon. Judge Manish S. Shah** |
| VACAYSTAY CONNECT LLC. | ) | |
| | ) | |
| *Defendant.* | ) | |

<u>**MEMORANDUM IN SUPPORT OF**</u>

<u>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

TABLE OF AUTHORITIES ....................................................................................................*ii*

I.      INTRODUCTION ...................................................................................................... 1

II.     BRIEF SUMMARY OF RELEVANT FACTS ...................................................... 2

III.    ARGUMENT ............................................................................................................. 4

        A.      Defendant has Failed to Raise a Genuine Question as to the Validity of
                VRP's Federally Registered VAYSTAYS Mark .................................... 5

        B.      Defendant's Admission of Likelihood of Confusion is Dispositive ..................... 6

        C.      An Analysis of the Likelihood of Confusion Factors Unanimously and
                Strongly Supports Summary Judgment for VRP .................................... 8

        D.      VRP's Request for an Injunction Should Also Be Granted ................................ 13

VI.     CONCLUSION ......................................................................................................... 15

# Table of Authorities

**Page(s)**

CASES

*Adventis, Inc. v. Consolidated Property Holdings, Inc.*,
    124 Fed. Appx. 169 (4th Cir. 2005) ............................................................7

*Am. Auto. Ass'n., Inc. v. AAA Legal Clinic of Jefferson Crooke, P.C.*,
    930 F.2d 1117 (5th Cir. 1991) ...................................................................7

*Autozone, Inc. v. Autozone Parts, Inc.*,
    543 F.3d 923 (7th Cir. 2008) ....................................................................10

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
    135 S. Ct. 1293 (2015) ..............................................................................5

*Barbecue Marx, Inc. v. 551 Ogden, Inc.*,
    235 F.3d 1041 (7th Cir. 2000) ..............................................................4-5

*CAE, Inc. v. Clean Air Engineering, Inc.*,
    267 F.3d 660 (7th Cir. 2001) ...................................................................12

*Days Inns Worldwide, Inc. v. Lincoln Park Hotels, Inc.*,
    500 F. Supp. 2d 770 (N.D. Ill. 2007) ........................................................7

*eBay, Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006) .................................................................................14

*Eli Lilly & Co. v. Natural Answers, Inc.*,
    233 F.3d 456 (7th Cir. 2000) ...................................................................14

*Jones v. Morehead*,
    68 U.S. 155 (1864) ................................................................................6-7

*Martahus v. Video Duplication Servs., Inc.*,
    3 F.3d 417 (Fed. Cir. 1993) .......................................................................7

*McGraw-Edison Co. v. Walt Disney Prods.*,
    787 F.2d 1163 (7th Cir. 1986) .................................................................13

*Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*,
    14-cv-7424, 2015 U.S. Dist. LEXIS 74700 (N.D. Ill. June 10, 2015)......14

*SMJ Group, Inc. v. 417 Lafayette Restaurant LLC*,
    439 F. Supp. 2d 281 (S.D.N.Y. 2006) .......................................................7

*Sorensen v. WD-40 Co.*,
    792 F.2d 712 (7th Cir. 2015) ...............................................................9, 11

*Sullivan v. CBS Corp.*
    385 F.3d 772 (7th Cir. 2004) ...................................................................................10

*Thermion, Inc. v. Thermion Metalizing Sys., Ltd.*,
    423 F. Supp. 2d 1146 (W.D. Wash. 2006)..............................................................7

*Ty, Inc. v. The Jones Group, Inc.*,
    237 F.3d 891 (7th Cir. 2001) .....................................................................................9

*Venus Labs., Inc. v. Vlahakis*,
    15-cv-1617, 2015 U.S. Dist. LEXIS 27171 (N.D. Ill. Mar. 5, 2015) .....................14

*Wilson v. Delauney*,
    245 F.2d 877 (C.C.P.A. 1957) ...................................................................................9

*Wm. Wrigley Jr. Co. v. Swerve IP, LLC*,
    900 F. Supp. 2d 794 (N.D. Ill. 2012) .....................................................................14

*Zazu Designs v. L'Oreal, S.A.*,
    979 F.2d 499 (7th Cir. 1992) ...............................................................................6, 15

## STATUTES

15 U.S.C. §1051(b) .........................................................................................................2

15 U.S.C. §1057(b) .........................................................................................................5

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(a) .......................................................................................................4

I.  **Introduction**

Plaintiff, Vacation Rental Partners, LLC ("VRP"), took all the proper steps prior to launching its new VAYSTAYS-branded vacation property rental services.  It hired trademark counsel, performed a trademark search to assess availability of the VAYSTAYS mark, and, finding no obstacles, filed a federal trademark application on an intent-to-use basis.  Defendant Vacaystay Connect, LLC ("Defendant") did none of these things.  Though Defendant may have been first to have *plans* to use the highly similar VACAYSTAY mark, and may even have made *preparations* to make such use, such preparations and plans, even if accepted as fact, would be insufficient under the law to establish rights in the mark.  While VRP's federal application was maturing toward issuance, Defendant was still preparing to launch its VACAYSTAY-branded vacation property distribution services.  Given the undisputed facts in this case, VRP has superior trademark rights in its VAYSTAY mark as a matter of law.

Nor is there any genuine dispute as to likelihood of confusion.  Indeed, Defendant's admission of such confusion through its counterclaims and threat letters ends the inquiry.  Yet, even without these admissions, the evidence is clear and overwhelming that actual confusion is occurring in the marketplace and is likely to persist.  In a short time, Defendant has amassed well over 100,000 vacation properties for use with its VACAYSTAY distribution platform from the world's largest hotel and resort companies.  Though VRP took the proper steps to put the world on notice of its ownership of the VAYSTAYS mark, its rights are now being threatened by Defendant's rampant infringement.  There remains no genuine issue of material fact in this case, and the facts presented compel judgment for VRP as a matter of law.  Accordingly, this Court should grant summary judgment to VRP.

## II.     <u>Brief Summary of Relevant Facts</u>

A full account of the relevant facts are set forth in Plaintiff's Local Rule 56(A)1 Statement ("Stmt.") filed herewith, which is fully supported by the adjoining exhibits.  VRP, together with its predecessor entity Gameday Housing, LLC ("Gameday"), has been in the vacation rental property business since 2006. (Stmt. ¶10).  In late 2013, the Gameday owners conceived a plan to launch a new brand of vacation rental property services under the name VAYSTAYS. (*Id*. ¶11).  They registered the URL www.vaystays.com and, through counsel, performed a clearance search and filed a federal trademark application claiming an intent-to-use the VAYSTAYS mark pursuant to 15 U.S.C. §1051(b) on February 12, 2014. (*Id*. ¶¶ 11-12). The application was subsequently assigned to VRP by Gameday. (*Id*. ¶12).

VRP's application was allowed, and proceeded through opposition unopposed.  By June 2014, VRP had started using its VAYSTAYS mark and website to assist consumers in booking vacation properties, and it filed a statement of use in October 2014. (*Id*. ¶¶ 13-14).  To satisfy a request for more detail, VRP submitted a second specimen in December. (*Id*. ¶14).  This specimen was approved, and the application issued as U.S. Reg. 4,693,380 on Feb. 24, 2015. (*Id*.).  The '380 Registration covers various services relating to the rental and management of vacation rental properties, such as "real estate listing services" and "rental of vacation homes." (*Id*. ¶¶ 12, 15-16).  Pursuant to 15 U.S.C. §1057(c), VRP's priority of use of the VAYSTAYS mark in association with these services dates back to February 12, 2014. (*Id*., ¶15).

Plaintiff uses its VAYSTAYS mark to list properties through its www.vaystays.com website and to distribute them through third party websites such as www.vrbo.com ("VRBO") and www.homeaway.com ("HomeAway"). (*Id*. ¶17).  To do so, it contracts with property owners, which may be anyone from an individual homeowner to a multi-national property

management company. (*Id*. ¶18). Such suppliers of property provide an inventory of available vacation rental properties for VRP to offer to consumers. (*Id*. ¶7). Thus, VRP's clients are both the purchasing consumers and the inventory suppliers. In its dealings with these entities, VRP's VAYSTAYS mark is always front and center. (*Id*. ¶¶ 17, 49).

Though much larger than VRP, Defendant is also in the business of selling, listing and distributing vacation rental property. (*Id*. ¶¶ 35, 39-40). However, it did not enter that business until after Plaintiff's priority date. (*Id*. ¶¶ 24-27). Defendant admits in documents produced that its first consumer booking was not until May 24, 2014. (*Id*. ¶24). Its allegations of use of the VACAYSTAY mark prior to that amount to nothing more than preparation. (*Id*., ¶¶ 21-23). The preparatory steps it <u>failed</u> to take were to search the trademark registry or file a trademark application. Indeed, Defendant did not even adopt the Vacaystay Connect name until September 30, 2014, when it changed its name from Vacation Storebuilder, LLC. (*Id*. ¶21).

The undisputed evidence shows that Defendant sent its first reservation receipt to a consumer bearing the VACAYSTAY mark just weeks before it changed its name. (*Id*. ¶24). Around this same time, Defendant registered the domains www.vacaystaystorebuilder.com and www.vacaystayconnect.com, both of which it now uses to cater vacation rental services to potential VRP clients. (*Id*. ¶¶ 37-39). VRP first learned of Defendant and its use of the VACAYSTAY mark in August of 2015. (*Id*, ¶19). When VRP reached out to Defendant over concerns of confusion experienced at an industry conference, Defendant responded that VRP's use of its VAYSTAYS mark would cause confusion with Defendant's VACAYSTAY mark, and demanded VRP to relinquish its registration. (*Id*. ¶45). Despite this brash stance, Defendant admittedly had not consulted trademark counsel, and repeatedly failed to provide any evidence to

support its priority claim despite repeated requests from VRP's trademark counsel. (*Id*.) Accordingly, VRP was forced to file this lawsuit in order to protect its rights. (ECF 1).

There have now been multiple instances of actual confusion by major players and potential or current clients of the respective Parties over use of the VAYSTAYS and VACAYSTAY marks. (*Id*. ¶¶ 46-47). Both Parties use their respective marks as their operational names. (*Id*., ¶ 54). The Parties' services directly overlap, as do their clientele and the channels through which they operate and sell. (*Id*., ¶¶48-52). Today, Defendant uses its VACAYSTAY mark with both suppliers (to attract inventory for distribution), consumers (to assist with bookings) and with listing websites such as VRBO and HomeAway. (*Id*. ¶¶ 39-44). Instead of taking steps to prevent confusion, Defendant's actions during this lawsuit have tended to promote it. For example, in January, it unveiled the website www.vacaystay.com, which it had kept password protected and out of public use for years. (*Id*. ¶¶ 29-32). The website now appears to consumers as a fully functional, independent listing website offering real vacation properties, with the VACAYSTAY mark front and center. (*Id*. ¶¶ 33-34).

Defendant has no counterclaims or defenses pending in this matter. Fact discovery closed on June 10, 2016. (ECF 20). All dispositive motions are due by August 15, 2016, per Order of the Court, making this motion timely. (*Id*.)

### III.  **Argument**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For VRP to prevail on its federal trademark and unfair competition claims, it must show "that its mark is protected under the Lanham Act and that the challenged mark is likely to cause confusion among consumers." *Barbecue Marx, Inc. v. 551 Ogden, Inc*., 235 F.3d 1041, 1043 (7th

Cir. 2000). In this case, VRP's federal registration is unchallenged, and Defendant has admitted that confusion is likely between the relevant marks. There is evidence of actual confusion, and the undisputed facts on likelihood of confusion factors establish that more confusion is eminent.

### A. Defendant has Failed to Raise a Genuine Question as to the Validity of VRP's Federally Registered VAYSTAYS Mark

VRP's federal trademark registration singularly establishes the first element it must prove. As the Supreme Court has noted, "[r]egistration is significant." *B&B Hardware, Inc. v. Hargis Indus., Inc*., 135 S. Ct. 1293, 1300 (2015). A registration provides "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." *Id*., (*quoting* 15 U.S.C. §1057(b)). Thus, VRP's '380 Registration is presumed valid, and completely satisfies the first element that VRP must prove.

Throughout this case, Defendant has only raised a single challenge to VRP's federal registration—that Defendant allegedly has priority of use. However, Defendant could not allege facts sufficient to support such a claim, and this Court has already dismissed the counterclaim as a matter of law. (ECF 32). Though the Court gave Defendant the opportunity to amend, no amendment has been filed because no facts exist to support improved allegations. Indeed, defense counsel admitted so in open court.

> THE COURT: Have you, on the part of the defense, developed any other information about actual commercial use of the mark on your part other than what's alleged in the counterclaim?
>
> Counsel: The best evidence is probably in the counterclaim that we know of right now….

(ECF 34, 3:19-25). Nor was counsel hopeful that more evidence would be found:

| THE COURT: | In light of my ruling and in light of where you are in discovery, now would be the time for anybody to ask for more time beyond June 10th if anyone thought you would need it. |
| Counsel: | We -- I think we've been producing what we've -- what we could, so I think more time won't really help. |

(*Id.*, 7:1-4, 13-14).

Moreover, the facts set forth above and in Plaintiff's 56.1 Statement at ¶¶ 20-32 are indisputable, largely admitted, and prove that Defendant cannot possibly prevail on a priority claim, even if it were to attempt to re-raise the issue. Defendant admittedly did not offer or sell any vacation rental services to consumers under the VACAYSTAY mark prior to VRP's priority date of February 12, 2014. (Stmt. ¶23). On May 23, 2014, Defendant's CEO exclaimed in an email to a customer that Defendant successfully completed its "first end to end booking," and one of his workers reported to him that "the very first consumer reservation receipt that went to a consumer for distribution" was on September 16, 2014. (*Id.*, ¶24.) These events are far too little and too late to establish common law priority. *See, e.g., Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503-04 (7th Cir. 1992).

Fact discovery is now closed. VRP's registration is presumed valid, and Defendant has plead no other challenges to the registration's validity at any point in this case. There is no genuine issue as to whether VRP's VAYSTAYS mark is protectable under the Lanham Act, and superior to any claims Defendant may have to its VACAYSTAY mark.

### B.     Defendant's Admission of Likelihood of Confusion is Dispositive

An analysis of the likelihood of confusion factors is unnecessary in this case because Defendant has itself plead confusion. Such a pleading is an admission of fact, and courts should not disturb such admissions. *Jones v. Morehead*, 68 U.S. 155, 165 (1864) ("It would be subversive of all sound practice, and tend largely to defeat the ends of justice, if the court should

refuse to accept a fact as settled, which is distinctly alleged in the bill, and admitted in the answer.") Indeed, several courts have bypassed multi-factor confusion analysis where the defendant admits to confusion. *See, e.g.*, *Days Inns Worldwide, Inc. v. Lincoln Park Hotels, Inc*., 500 F. Supp. 2d 770, 774-775 (N.D. Ill. 2007)(skipping confusion factor analysis and granting plaintiff summary judgment where defendants "made various admissions, pursuant to Local Rule 56.1, that show that there is a likelihood of confusion"); *SMJ Group, Inc. v. 417 Lafayette Restaurant LLC*, 439 F. Supp. 2d 281, 288 (S.D.N.Y. 2006)("In this case, application of the so-called *Polaroid* factors is unnecessary and unhelpful, because the parties essentially agree that there *is* confusion."). Indeed, because likelihood of confusion is "an inherently factual issue," some appellate courts have found that district courts must accept admissions as to confusion, even when dispositive. *See, e.g.*, *Adventis, Inc. v. Consolidated Property Holdings, Inc*., 124 Fed. Appx. 169, 173 (4th Cir. 2005); *citing Am. Auto. Ass'n., Inc. v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir. 1991).

A scenario where both parties concede the likelihood of confusion comes up most frequently in the context of a priority dispute, where both parties claim rights in a mark or marks based on prior use. *Adventis*, 124 Fed. Appx. at 172 ("The parties' reciprocal admissions that their marks were confusingly similar effectively reduced their dispute to a litigation addressing [1] whether either party had a valid, protectable trademark and [2] which had priority of use."); *see also Martahus v. Video Duplication Servs., Inc.*, 3 F.3d 417, 419-420 (Fed. Cir. 1993) (reciprocal party pleadings as to confusion taken as admissions that reduced dispute to one of priority); *Thermion, Inc. v. Thermion Metalizing Sys., Ltd*., 423 F. Supp. 2d 1146, 1148 (W.D. Wash. 2006) (where "both parties agree that there is a likelihood of confusion," "the remaining question is who is the rightful owner" of the mark).

That is the context of this case.  By counterclaiming infringement and unfair competition, and pleading that a likelihood of confusion would result from VRP's continued use of its VAYSTAYS mark, Defendant has admitted the ultimate factual question that VRP must otherwise prove.

> "*Vacation Rental Partners' use of the mark "Vaystays" is causing substantial confusion in the marketplace, and violates the common law trademark rights of VSC. Be advised that VSC will be assessing its rights and potential remedies with specialized intellectual property counsel, including evaluation of a potential action to cancel or invalidate the 380 Mark. In any case, we hereby demand that Vacation Rental Partners, LLC immediately cease and desist from further use of the name 'Vaystays', as continued use thereof violates VSC's trademark rights and will damage VSC's brand, image and reputation*."

(PX-14 (demand letter from Defendant's counsel Oct. 28, 2015)).

> "[VRP's] *use of the mark VAYSTAYS without the authorization of VacayStay is likely to deceive and cause confusion, mistake and deception among consumers or potential consumers as to the source or origin of Counterclaim Defendant's services and the sponsorship or endorsement of those services by VacayStay*."

(ECF 22, Counterclaim ¶19).  The Court's action to dismiss Defendant's Counterclaim does not erase the effect of the admissions made by Defendant in pleading them.  Through these admissions, Defendant reduced this case to a priority dispute.  And in support of its alleged priority, Defendant relied on facts that this Court has already ruled insufficient as a matter of law.  In the absence of any additional facts at the close of discovery (indeed, if anything, some of Defendants allegations have been disproven), the only result can be judgment for VRP.

### C.   An Analysis of the Likelihood of Confusion Factors Unanimously and Strongly Supports Summary Judgment for VRP

Even if this Court were to deem it necessary to conduct a confusion factor analysis, it would reach the same conclusion that Defendant's use of the VACAYSTAY mark is likely to cause confusion with VRP's federal registration.  Of the seven factors used in the Seventh

- 8 -

Circuit to analyze likelihood of confusion, all of them favor VRP.[1]   Notably, "a court may grant summary judgment even if there is a genuine issue of material fact as to one or more of the seven factors, as long as no reasonable jury, looking at the seven factors as a whole," could dispute whether or not confusion is likely. *Sorensen v. WD-40 Co*., 792 F.2d 712, 726 (7th Cir. 2015). "Even though no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important factors in a likelihood of confusion case." *Ty, Inc. v. The Jones Group, Inc*., 237 F.3d 891, 898 (7th Cir. 2001).   Here, the nearly identical nature of the marks, and the evidence of actual confusion, combined with other factors, makes the likelihood of further confusion impossible to deny.

### 1.    The marks are *highly* similar in appearance and suggestion

Deemed one of the "most important factors," this factor strongly favors a finding of a likelihood of confusion.   Defendant's VACAYSTAY mark differs from Plaintiff's VAYSTAY only by inclusion of the letters "ca," and deletion of the plural "s.   Courts have long recognized that "there is no material difference, in a trademark sense, between the singular and plural forms" of a word or term, and "they [are] therefore regarded as the same mark." *Wilson v. Delauney*, 245 F.2d 877, 878, n.1 (C.C.P.A. 1957).   As to the "ca" component, it phonetically rhymes with the initial "va" component, and tends to fall away when saying the marks aloud quickly.

Meanwhile, the *suggestion* made by the marks is identical.   The marks are used in association with the rental of vacation resorts and homes by consumers.   The terms "vay" and "vacay" are both suggestive of the word "vacation."   Because the consumers are looking for overnight accommodations when seeking vacation rentals, they are looking for a place to "stay."

---

[1]    The factors are "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *Sorensen*, 792 F.2d at 726.

Accordingly, both marks are suggestive of places to stay while on vacation. Both Parties obviously appreciate this clever play on words, which is why they selected the respective marks around which to develop their brands. By occasionally adding generic terms like "Connect" or "Storebuilder" to the distinctive VACAYSTAY mark, Defendant does not lessen the similarity or suggestion of the marks. The common element across Defendant's marketing platform is the VACAYSTAY mark. Indeed, it refers to itself as "VacayStay" in its pleadings. (*See* ECF 22).

Notably, one cannot merely compare the marks in isolation, but must consider their similarity "in light of what happens in the marketplace." *Sullivan v. CBS Corp.* 385 F.3d 772, 777 (7th Cir. 2004). However, this distinction is unavailing to Defendants. In this case, the marks are used as the names of the companies, and to identify them in textual sentences, or even over the phone. (Stmt. ¶43). There is no color or design or style in such communications, and often the "Connect" or "Storebuilder" is omitted. Even Defendant's CEO does this when discussing the company. (*Id.*) Finally, the Parties' respective listing websites are reached by typing in the basic, non-stylized characters into a browser or a search engine, and do not include any additional words (*compare* www.vacaystay.com to www.vaystays.com).

### 2. The services directly overlap

The question with this factor is not whether the services are "interchangeable, but whether [they] are the kind the public might very well attribute to a single source." *Autozone, Inc. v. Autozone Parts, Inc.*, 543 F.3d 923, 931 (7th Cir. 2008). Once again, this distinction is of no significance here because the services are overlapping. From a consumer standpoint, booking a property through HomeAway is the same service regardless of whether the booking is performed (and the property is managed) by VACAYSTAY or by VAYSTAYS. (*Compare* PX 25 *with* VRP 323-324). If the consumer has a bad experience with the former, it is likely to

reflect that bad experience on the latter due to the high similarity of the marks. From the standpoint of the corporate client or supplier of inventory, the distribution services offered by VRP and Defendant are the same. The difference is merely one of scale, where Defendant overwhelms the marketplace with over 120,000 contracted properties available. (Stmt. ¶42). In any event, Defendant clearly offers the services described in VRP's federal registration under the VACAYSTAY mark. The second factor also strongly favors summary judgment for VRP.

### 3.      The areas and manners of concurrent use are identical

For the third factor, courts "look to whether the parties use the same channels of commerce, target the same general audience, or use similar marketing procedures." *Sorenson*, 792 F.3d at 730. In this case, the Parties do all three in the same manner. Both Parties primarily operate to distribute or list vacation rental properties through the internet. (Stmt., ¶¶ 6, 8, 48). They both interact with vacationers via email, and sell to them through property listings promoted on the same third party websites (VRBO and Homeaway). (*Id.*, 49). The Parties have common corporate supplier clients, and seek relationships with such clients at the same marketing events and conferences. (*Id.*, 50-52). Both Parties are also both headquartered in Chicago, which tends to add to the likelihood of confusion in the minds of corporate clients. Accordingly, the third factor also strongly favors a finding of likely confusion.

### 4.      The low degree of consumer care with respect to the services offered by the Parties further favors a likelihood of confusion

Generally, "the more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care," which favors a finding of confusion. *Sorenson*, 792 F.3d at 730. There are hundreds if not thousands of vacation property listing sites, and it is not unusual for the same property to be listed on multiple sites concurrently. (Stmt. ¶8). While vacation rentals may be expensive and carefully considered, it is the property

(*not* the property booking company) on which the consumer places its focus. The Parties do not own the properties. Rather, they compete to facilitate the bookings. (*Id*. ¶9). The consumer's degree of care as to the booking agent is likely very low. This factor also favors confusion.

### 5.    The strength of the plaintiff's mark is unchallenged

A mark's strength refers to its distinctiveness, or its "propensity to identify the products or services sold as emanating from a particular source." *CAE, Inc. v. Clean Air Engineering, Inc*., 267 F.3d 660, 684 (7th Cir. 2001). As discussed above, VRP's VAYSTAYS mark is suggestive of a place to stay while on vacation, placing it in the center of the spectrum of mark distinction. *See Id*. Importantly, there is no evidence in the record of similar marks on either the trademark registry or in common law use other than that of Defendant. Though Defendant's CEO suggested there are some during his deposition, Defendants produced evidence of none during discovery, and the only one he could name was VAYCAYHERO, which lacks the common "stay" term, and adds an arbitrary "hero" term. (Stmt. ¶53). VRP is a small, young company, but is working diligently to spread its brand, and has successfully attracted inventory from major corporate clients now familiar with the VAYSTAYS mark. As a result of VRP's federal registration, the suggestiveness of its mark, the growing prominence of the mark in the vacation rental marketplace, and the absence of similar third party marks, this factor also favors VRP.

### 6.    There is significant evidence of actual confusion

Another of the "most important factors," the evidence of actual confusion seems nearly dispositive in this case. While rare, evidence of actual confusion "is entitled to substantial weight" when present. *CAE*, 267 F.3d at 685. In *CAE*, even a single instance of confusion over a twenty year span of coexistence, provided purely through testimony of an interested party recounting what a supplier had told him, tended to support a likelihood of confusion. *Id*. at 686.

- 12 -

Here, multiple instances of confusion by actual clients is supported by undisputed documentary evidence, and this in a span of less than a single year shortly after the brands were introduced to the market. (Stmt. ¶¶ 46-47). Furthermore, this confusion is by relatively sophisticated suppliers and aggregators within the vacation rental property industry. One can only imagine the magnitude of unreported actual confusion occurring as less sophisticated and inattentive consumers are selecting listing websites with which to book their vacation. This factor very strongly supports a finding of likelihood of confusion, and indeed proves confusion is happening.

### 7.    Defendant has intentionally expanded its use of VACAYSTAY when it knew or should have known that such use was infringing

Defendant need not "pass off" itself as VRP because it is much larger and better funded. Instead, its bad faith intent is evidenced through its attempts to drive VRP from the market through empty threats and irresponsible expansion. Without even having trademark counsel review its claims, Defendant responded to VRP's concerns over confusion with a completely unsupported demand that VRP relinquish its federal registration or face a lawsuit. (Stmt. ¶45). It then, after suit was filed, unveiled a previously unused consumer website at www.vacaystay.com to directly compete with VRP's www.vaystays.com. (*Id*. at ¶¶ 33-34). This final and "important" factor also favors a finding of likelihood of confusion.

Each of the seven factors favor a finding of likelihood of confusion, and none weigh against such a finding. No reasonable jury could weigh the evidence and reach a conclusion other than that VRP has carried its burden on the question of likelihood of confusion. Furthermore, the burdens of proof required for VRP's Illinois state claims in Counts IV and V are fully satisfied with the evidence presented and discussed in association with the factors above. *See McGraw-Edison Co. v. Walt Disney Prods*., 787 F.2d 1163, 1173-74 (7th Cir. 1986). Accordingly, this Court should grant VRP's Motion for Summary Judgment.

- 13 -

**D.      VRP's Request for an Injunction Should Also Be Granted**

Judgment will have little effect, and harm to VRP's brand and business will continue, if Defendant is not sufficiently enjoined from use of the VACAYSTAY mark.  While the question of damages may be subsequently addressed, now that it is clear that VRP has superior rights, and confusion is happening more frequently as Defendant continues to expand its brand, VRP can wait no longer for permanent injunctive relief.

Before entering a permanent injunction, courts must assess four factors:  (1) whether the plaintiff will suffer irreparable harm without an injunction; (2) the availability of adequate remedies at law; (3) the public interest; and (4) the balance of harms. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Courts have consistently found that public interest is served by an injunction instances of trademark infringement "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly & Co. v. Natural Answers, Inc*., 233 F.3d 456, 469 (7th Cir. 2000).  Traditionally, the questions of "irreparable harm and inadequate remedy at law are presumed in trademark infringement cases in the Northern District of Illinois." *Venus Labs., Inc. v. Vlahakis*, 15-cv-1617, 2015 U.S. Dist. LEXIS 27171, *11 (N.D. Ill. Mar. 5, 2015)(*citing Wm. Wrigley Jr. Co. v. Swerve IP, LLC*, 900 F. Supp. 2d 794, 803 (N.D. Ill. 2012)). While that presumption has been questioned by at least one court in this District, the court ultimately found the evidence of actual consumer confusion and the potential resulting loss of business sufficient to support these elements of the injunction test. *Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*, 14-cv-7424, 2015 U.S. Dist. LEXIS 74700, *36-41 (N.D. Ill. June 10, 2015)(Kennelly, J.).

Based on the high likelihood of confusion in this case, the evidence of repeated actual confusion over a short time, and Defendant's admission that confusion is causing a problem in

the marketplace, Defendant should be enjoined from on-going use of the VACAYSTAY mark as requested in its prayer for relief. (*See* ECF 21). The public is served by such an injunction through the avoidance of confusion, and, even if not presumed, irreparable harm should be clear based on the actual confusion occurring. No remedy other than the injunction VRP has requested can remedy this confusion. As to the balance of harms, a reasonable phase out can be determined, and requiring Defendant to change its name would not prevent it from continuing to offer its services to existing or prospective customers. Defendant has only been using the VACAYSTAY mark in commerce for approximately two years, and the evidence shows that co-existence of the Parties in the vacation rental marketplace is not possible. Both Parties would be served by it migrating to a new mark. While painful, it is only equitable that the cost of making the move be borne by the party that failed to conduct a diligent analysis of the availability of its selected mark, and failed to file an application. Such a ruling favors the same policy of registration endorsed in *Zazu Designs,* 979 F.2d at 503, long ago.

### IV.  Conclusion

For the reasons set forth above, this Court should grant VRP's Motion for Summary Judgment and enter an Order granting the injunctive relief requested in VRP's First Amended Complaint.

Respectfully submitted,

Date: July 21, 2016

By:  _____ s/Mike R. Turner/ _____
    One of the Attorneys for Plaintiff,
    Vacation Rental Partners, LLC.

Michael G. Kelber
Mike R. Turner
Andrea S. Fuelleman
Neal, Gerber & Eisenberg LLP
Two North LaSalle Street, Suite 1700
Chicago, Illinois  60602
Telephone: (312) 269-8000

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 21, 2016, a copy of the foregoing **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** was served on all counsel of record for Defendant Vacaystay Connect, LLC, via the Court's Electronic Filing System:

> Lawrence J. Crain
> Steven P. Fallon
> Jessica L. Bloodgood
> GREER, BURNS & CRAIN, LTD.
> 300 South Wacker Drive, Suite 2500
> Chicago, Illinois 60606
> Tel: (312) 360-0080
> lcrain@gbclaw.net
> sfallon@gbclaw.net
> jbloodgood@gbclaw.net

> s/Andrea S. Fuelleman/
> Andrea S. Fuelleman