**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| VACATION RENTAL PARTNERS, LLC; | ) |
| *Plaintiff*, | ) ) ) Case No. 1:15-cv-10656 |
| v. | ) ) |
| VACAYSTAY CONNECT LLC. | ) **Hon. Judge Manish S. Shah** ) |
| *Defendant*. | ) ) |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

TABLE OF AUTHORITIES ................................................................................................. ii

       **Introduction** .............................................................................................................. 1

I.    **Defendant's Collateral Attack on VRP's Registration is Improper and Should be Rejected as Untimely** ..................................................................... 2

II.   **Even if Considered, Defendant's Anti-Trafficking Defense Fails** ............................... 3

      A.    There was No "Trafficking"—the Entire Business of Gameday Housing, LLC was Fully and Completely Rolled into VRP .................................................. 4

      B.    Even if §1060 is Considered, the Exception Applies to the Transaction in Question ...................................................................................................... 6

III.  **Defendant has Failed to Rebut the Overwhelming Evidence of Likelihood of Confusion** ................................................................................................................. 10

      A.    Defendant's Pre-Litigation Letter is *Not* Covered by F.R.E. 408, and It *Does* Admit Confusion ......................................................................................... 10

      B.    Summary Judgment Does Not Require "Undisputed" Evidence On Each of the Seven Likelihood of Confusion Factors ....................................................... 11

      C.    The Similarity of the Marks is Obvious and Supported by the Evidence ............ 11

      D.    Defendant's Focus on Corporate Clients Does Not Erase the Evidence Showing How They Interact With Consumers ..................................................... 12

      E.    VRP's Evidence of Actual Confusion is Admissible and Weighs Heavily in Favor of Summary Judgment ............................................................................ 13

V.   **Conclusion** ............................................................................................................... 14

## Table of Authorities

**Page(s)**

**CASES**

*Amazon Techs. Inc. v. Wax*,
    95 USPQ2d 1865 (TTAB 2010) ...................................................................................................6

*Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*,
    11-cv-2242, 2013 U.S. Dist. LEXIS 180912 (N.D. Ill. 2013) ........................................... 13-14

*Bethany Pharmacal Co., Inc. v. QVC, Inc.*,
    241 F.3d 854 (7th Cir. 2001) ................................................................................................. 2-3

*Cae, Inc. v. Clean Air Engineering, Inc.*,
    267 F.3d 660 (7th Cir. 2001) .................................................................................................11

*Creative Arts By Calloway, LLC v. Brooks*,
    09-cv-10488, 2012 U.S. Dist. LEXIS 182699 (S.D.N.Y. Dec. 27, 2012) .................................7

*Exel Oyj v. D'Ascoli*,
    2008 TTAB LEXIS 562 (TTAB Sep. 19, 2008) ................................................................... 7-8

*Fitzpatrick v. Sony-BMG Music Entertainment, Inc*,
    99 USPQ2d 1052 (S.D.N.Y. 2010) ..........................................................................................7

*Greene v. Ab Coaster Holdings, Inc.*,
    10-cv-38, 2012 U.S. Dist. LEXIS 136890 (S.D. Ohio Sep. 25, 2012) .....................................7

*High Voltage Bevs., LLC v. Coca-Cola Co.*,
    08-cv-367, 2010 U.S. Dist. LEXIS 141785 (W.D.N.C. Dec. 16, 2010) ............................... 5-6

*Int'l. Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*,
    846 F.2d 1079 (7th Cir. 1988) ...............................................................................................13

*J. Atkins Holdings Ltd. v. English Discounts Inc.*,
    729 F. Supp. 945 (S.D.N.Y. 1990)) .........................................................................................5

*Marshak v. Green*,
    746 F.2d 927 (2d Cir. 1984) ....................................................................................................7

*Oest v. Ill. Dep't of Corrections*,
    240 F.3d 605 (7th Cir. 2001) .................................................................................................11

*Sebastian Brown Prods. LLC v. Muzooka, Inc.*,
    15-cv-1720, 2016 U.S. Dist. LEXIS 33483 (N.D. Cal. Mar. 14, 2016) ...................................7

*Sebastian Brown Prods. LLC v. Muzooka, Inc.*,
    15-cv-1720, 2016 U.S. Dist. LEXIS 86910 (N.D. Cal. July 5, 2016) ......................................7

**STATUTES**

15 U.S.C. §1057 ..................................................................................................................2

15 U.S.C. §1060 ............................................................................................................ *passim*

**OTHER AUTHORITIES**

Hearing before the Subcommittee on Patents, Copyrights and Trademarks, March 15, 1988 ................................................................................................................................ 8-9

McCarthy on Trademarks and Unfair Competition (4th ed. 2008) .................................................3

Senate Judiciary Committee Rpt. on S. 1883, Rpt. No. 515, 100th Cong., Sep. 15, 1988 .......... 8-9

Trademark Law Revision Act of 1988 ....................................................................................3, 9

This case is ripe for summary judgment, and should be decided in VRP's favor. Defendant has failed to successfully dispute any of VRP's facts and evidence that proves Defendant is infringing VRP's federally-registered VAYSTAYS mark by continuing to use the confusingly similar VACAYSTAY mark in association with overlapping services. Instead, Defendant has come forth with irrelevant facts and misplaced arguments in an apparent attempt to manufacture a fact question where none exists. For example, the fact that Defendant alternatively denied there is a likelihood of confusion after admitting its existence does not erase its original admission. Additionally, that VRP did not update the WHOIS registry, and did update its first use in commerce date, do not change the fact that VRP holds a federal registration with priority over Defendant, giving VRP *prima facie* rights in the VAYSTAYS mark Defendant is infringing. None of the facts brought forth by Defendant are material to summary judgment.

Defendant also, for the first time in this case, attempts to challenge VRP's registration as having violated the Lanham Act's anti-trafficking provision. This belated argument, which comprises the bulk of Defendant's Response, should be rejected. Defendant never plead this matter as a defense or counterclaim, never raised it in discovery, and never mentioned it to VRP or the Court prior to filing its Response. If Defendant would have done so, it would have learned that the anti-trafficking provision does not apply in this case.

In what little remains of Defendant's Response, Defendant presents argument (rather than facts) regarding the likelihood of confusion factors. In doing so, it treats the factors as if a question as to any one of them will prevent summary judgment. Such is not the law. The facts, considered as a whole, overwhelmingly support finding a likelihood of confusion, and there are multiple documented examples of *actual* confusion. No reasonable jury could find otherwise. As a result, this Court should grant VRP's Motion for Summary Judgment.

I.  **Defendant's Collateral Attack on VRP's Registration is Improper and Should be Rejected as Untimely.**

VRP has plead and provided copies of U.S. trademark Registration No. 4,693,380, issued in its name, which covers the VAYSTAYS mark for a number of Class 36 real estate services. As explained in VRP's opening brief, this completely satisfies VRP's obligation to prove rights in its VAYSTAYS mark. ECF 36 at 9; *see also* 15 U.S.C. §1057(b)("A certificate of registration of a mark upon the principal register provided by this chapter shall be *prima facie* evidence of the validity of the registered mark and…of the owner's ownership of the mark."). Defendant's only challenge to VRP's rights throughout this case has been a claim that Defendant had priority, and that claim failed. ECF 32. Defendant did not attempt to re-plead the claim after it was dismissed, and never plead any affirmative defenses. ECF 22. Yet now, months after discovery closed, and in response to summary judgment, Defendant raises for the first time an entirely new and unrelated challenge to VRP's federal registration, namely, that it is void on account of an allegedly impermissible assignment.

Though this new allegation is without merit, as explained below, it is also not properly before the Court. Litigation begins with pleadings, and is followed by discovery for a reason. A party cannot simply raise a new, un-plead defense after discovery and without leave of court. And it certainly should not be allowed to do so in an attempt to thwart summary judgment. *See, e.g., Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861-862 (7th Cir. 2001). In *Bethany*, the Seventh Circuit affirmed a district court's denial of a motion to amend that sought to add a new claim for use in responding to the defendant's summary judgment motion after the close of fact discovery. *Id*. The appellate court found that the motion was untimely, and should have been brought when the facts underlying the new claim became evident. *Id*.

Here, Defendant did not even bother to file a motion for leave to amend or an amended pleading. It simply raised the new defense, ignoring the fact that it is not plead. The defense is based on a document that has been publically available on the USPTO website since before this case was filed. It could have been raised at any time, and doing so during or before discovery would have allowed VRP the opportunity to develop the record and have the defense appropriately dismissed. Forcing VRP to do so now, in its summary judgment reply brief, is obviously prejudicial to VRP. This Court should follow *Bethany* and grant summary judgment as that court did, without considering the new defense.

## II.      Even if Considered, Defendant's Anti-Trafficking Defense Fails.

The Trademark Law Revision Act of 1988 amended the Lanham Act to allow for the filing of applications on an intent-to-use basis. Over concerns that an entity might "traffic" marks by filing applications without intent to *use* the marks but only intent to *sell* them to others, Congress amended §1060 to include what is referred to as the "anti-trafficking provision." McCarthy, J. Thomas, 3 McCarthy on Trademarks and Unfair Competition § 18:13 (4th ed. 2008). Under the provision, applicants cannot assign an intent-to-use application prior to filing a statement of use, **unless** the assignment is "to a successor to the business of the applicant, or portion thereof, to which the mark pertains, if that business is ongoing and existing." 15 U.S.C. §1060(a)(1). The transaction at issue here is not of the type for which the anti-trafficking provision was created, and if considered at all, the above exception applies. Defendant asks this Court to improperly consider whether there was actual use of the VAYSTAYS mark prior to the application and associated business being transferred to VRP, but this purported issue of material fact is irrelevant under a proper reading of §1060. Defendant's newly-raised defense presents no question of fact and should be rejected solely on legal grounds.

A.  **There was No "Trafficking"—the Entire Business of Gameday Housing, LLC was Fully and Completely Rolled into VRP.**

Gameday Housing, LLC ("Gameday") was formed by Chris Brusznicki, Geoffrey Polk and Wes Smithe on June 28, 2006, to operate a rental property business. Joint Declaration of the Former Owners of Gameday Housing, LLC ("Joint Decl."), ¶2.  The business originally focused on short-term rentals near sports venues on dates corresponding to sporting events, but eventually grew to include other types of vacation rentals. *Id*., ¶3.  In 2013, the Gameday owners acquired www.vaystays.com and filed a trademark application (all through Gameday), to accommodate the broader types of vacation rentals being offered.  The owners founded VRP in March, 2014, as a vehicle to raise money and continue the business under a more expansive name. *Id*., ¶¶ 3-4.  Once the paperwork was ready, as part of the funding round, the owners contributed the entire business of Gameday into VRP, and VRP became the new operating entity that continued that business. *Id*. at ¶5.  As a result, all of the assets of Gameday became assets of VRP. *Id*. at ¶¶ 5-7.  The employees of Gameday became employees of VRP, the trademarks and all goodwill associated with them became trademarks and goodwill of VRP, and Gameday's entire property rental business transferred to VRP. *Id*.  This was documented via a Contribution and Exchange Agreement dated May 7, 2014, and signed by the owners. *Id*.  As the Agreement shows, the business address and the distribution of ownership remained exactly the same. *Id*. Nothing remained of Gameday, and it was dissolved. *Id*.

Defendant has not and cannot provide any evidence that calls these facts into question. Furthermore, its claim that the above facts are "not corroborated by any documentary evidence" (ECF 43 at 6) is false.  The Contribution Agreement proves the above facts and, despite Defendant's suggestion to the contrary in its Response, that Agreement *was* produced during discovery (as VRP 262-269).  VRP cannot be at fault for Defendant's failure to review the

document. The public documents provided in association with the Joint Declaration further support VRP's account of the transaction. Also, the facts are essentially the same as recounted by Mr. Polk during his deposition, taken long before Defendant raised the question of §1060 applicability. As Mr. Polk testified, Gameday was "contributed into" VRP as "part of a reorganization." Ex. 1, Deposition of Geoffrey Polk, 14:4-10. Mr. Polk also testified about launching plans for the VAYSTAYS brand in 2013 (*Id*., 26:6-27:16), about forming VRP for the purpose of receiving Gameday's business (*Id*., 20:2-24), and about Gameday ceasing to exist as a result. *Id*., 12:13-17; 13:19-23.

Mr. Polk's testimony was given under oath, and would be the same if presented to a jury or to this Court. It is corroborated by the Contribution Agreement, the State of Indiana records, and the Joint Declaration, and Defendant has no evidence to dispute it. The *nunc pro tunc* assignment about which Defendant protests was created merely to document that the trademarks had transferred. Joint Decl. ¶8. It is the underlying transaction whereby 100% of Gameday's business was rolled into VRP that matters. *See, e.g., J. Atkins Holdings Ltd. v. English Discounts Inc*., 729 F. Supp. 945, 950-51 (S.D.N.Y. 1990) (upholding transfer of marks covered by a "naked assignment" document because the "realities of the transaction" made clear that the business passed with the marks).

Section 1060 is not relevant under these facts. While technically the entire business of Gameday was transferred to VRP and Gameday was dissolved, the transaction was more akin to a merger than an assignment or "sale" of assets where something could conceivably by "trafficked." *See, e.g., High Voltage Bevs., LLC v. Coca-Cola Co*., 08-cv-367, 2010 U.S. Dist. LEXIS 141785, *24 (W.D.N.C. Dec. 16, 2010) (the "surviving or resulting corporation" from a merger was the proper entity to file statement of use as "the owner of the application at that

time.") For example, in *Amazon Techs. Inc. v. Wax*, the Trademark Trial and Appeals Board found that a "Trademark Assignment" made prior to the filing of a statement of use did not violate §1060 because the transaction "was more akin to a change in the type of entity which owned the application than to a traditional assignment of a mark from one unrelated party to another." 95 USPQ2d 1865, 1871 (TTAB 2010). In that case, one owner assigned his "entire right, title and interest" to the mark and goodwill in question over to another owner. *Id*. The Board logically noted that "[t]here is no 'trafficking' in the mark where the sole owner of the application after the assignment was an owner of the application before the assignment." *Id*. at 1871-72. The same principle applies here. Messrs. Brusznicki, Polk and Young cannot have "trafficked" the VAYSTAYS mark to themselves. They owned the application via Gameday before May 7, 2014, and they owned the application via VRP after May 7, 2014. The concerns addressed by Congress with §1060 have no relevance here.

      **B.    Even if §1060 is Considered, the Exception Applies to the Transaction in Question.**

Section 1060 does not affect the assignment of a mark to the successor of an ongoing and existing business to which the mark pertains. Under the facts set forth in the above section, which is undisputed by any evidence, there is no question that VRP is the "successor" to Gameday's online property rental business. It is also indisputable that such business was "ongoing and existing" long before the May 7, 2014 transaction that effectively ended Gameday and officially launched VRP. The application in question clearly "pertained" to that online property rental business, as evidenced by the application's designation of services. Thus, under a basic and straightforward reading of §1060, the "assignment" in question was authorized.

Defendant cites a couple of unreported and non-controlling cases that appear to have read "the business of the applicant to which the mark pertains" in §1060 to require that the mark

subject of an intent-to-use application be in actual use prior to the assignment. *Sebastian Brown Prods. LLC v. Muzooka, Inc*., 15-cv-1720, 2016 U.S. Dist. LEXIS 33483 (N.D. Cal. Mar. 14, 2016) (vacated on reconsideration, 2016 U.S. Dist. LEXIS 86910 (July 5, 2016); *Greene v. Ab Coaster Holdings, Inc*., 10-cv-38, 2012 U.S. Dist. LEXIS 136890 (S.D. Ohio Sep. 25, 2012). However, at least as many courts have not taken that view. *See, e.g., Creative Arts By Calloway, LLC v. Brooks*, 09-cv-10488, 2012 U.S. Dist. LEXIS 182699, *29 (S.D.N.Y. Dec. 27, 2012) (noting "the law is not clear" on whether the §1060 requires the goods and services to have been actually offered at time of assignment); *Fitzpatrick v. Sony-BMG Music Entertainment, Inc*., 99 USPQ2d 1052, 2010 U.S. Dist. LEXIS 87574, *10 (S.D.N.Y. 2010) (applying §1060 exception despite fact that assignor had not used the mark at the time of assignment).

Of these cases, *Fitzpatrick* is the closest surrogate to the present scenario. It involved the assignment of the mark ARTEMIS RECORDS from an individual that had "operated various record companies" and was "well known in the music industry" to an LLC the individual ran that eventually used the mark "for the same purposes intended by [the individual] at the time of his trademark application." *Id*., *13-14. The court found that goodwill transferred despite the mark not having been used at the time of the assignment because "goodwill is transferred where there is a 'continuity of management' and where the assignee produces a product substantially similar to that of the assignor." *Id*., (*citing Marshak v. Green*, 746 F.2d 927, 930 (2d Cir. 1984)). In the present case, there was also such "continuity of management," and the vacation rental services offered simply continued under the new VRP name.

It seems no court in the Seventh Circuit has had occasion to consider the exception in §1060(a)(1). However, the Trademark Trial and Appeals Board provided a logical and helpful analysis in *Exel Oyj v. D'Ascoli*, 2008 TTAB LEXIS 562 (TTAB Sep. 19, 2008). Finding that

the exception applied in a case where there had been no use of the mark with the relevant goods and services, the Board made the following observations:

> The exception in Section 10 concerning assignment of intent to use applications and, in particular, the use of the phrase "if that business is ongoing and existing" should not be read in a manner that would be inconsistent with the intent behind Section 1(b) of the Trademark Act, 15, U.S.C. §1051(b). …The statute must allow for the transfer of a Section 1(b) application claiming a bona fide intention to use the mark for goods which are not yet in production or which may be in the planning stage, and which may represent an extension of an applicant's business. …The antitrafficking provision of the statute merely requires that if the application is transferred prior to use of the mark, and the transferor remains an ongoing and existing business after the transfer, that the transfer be accompanied by that portion of the transferor's business **to which the mark pertained, i.e., that portion of the business that would have used the mark had there been no transfer**.

*Id*., *23-24 (emphasis added). A review of the legislative history relating to §1060(a)(1) confirms that the Board's reading of "business to which the mark pertains" aligns with legislative intent, as shown by the quotes describing the Anti-Trafficking Provision from the legislative record below.

> To provide further assurance that an applicant's intention to use a mark is bona fide, the legislation amends Section 10 of the Act to prohibit assignments of intent-to-use applications *unless the application is assigned with the business associated with the intended use of the mark*. This provision, which is found in Section 12 of the bill, will prevent utilization of the intent-to-use system to traffic in marks.

Senate Judiciary Committee Rpt. on S. 1883, Rpt. No. 515, 100th Cong., Sep. 15, 1988 (Sen. Biden) at p. 25 (emphasis added, included as Ex. 2.)

> SECTION 12 would amend Section 10 of the Act by providing that an intent-to-use application can only be assigned to a successor to the business of the applicant or that portion of the applicant's business *in which the mark is intended to be used*.

- 8 -

Hearing before the Subcommittee on Patents, Copyrights and Trademarks, March 15, 1988 (Statement of Donald J. Quigg, Asst. Sec. and Commissioner of Patent and Trademarks) at p. 391. (emphasis added, included as Ex. 3.) These reports contemplate assigning intent-to-use applications where the underlying marks that are still only *intended* to be used. The business "to which the mark pertains" is that "business associated with the *intended use* of the mark" or the "business in which the mark is *intended to be used*." *Id*. It is clear that Congress did not believe it was creating a requirement that marks subject to intent-to-use applications be *actually* used in order to be assigned. Indeed, a reading that would render registrations resulting from intent-to-use applications void in situations where actual use had not commenced prior to assignment would frustrate the larger purpose behind the Trademark Law Revision Act, which was to allow for intent-to-use applications in the first place. It also would be impossible under such a reading to acquire a company without rendering all of the assigning company's pending intent-to-use trademark applications worthless where the underlying marks had not yet been used. Such a reading would very likely wreak havoc on the registry by rendering countless otherwise valid registrations void.

VRP followed the letter and intent of the Lanham Act in every respect, and in all cases took the proper steps to protect its VAYSTAYS mark. The VRP owners did not "traffic" the VAYSTAYS mark. They intended to use it when they filed their application, and soon thereafter *did* use it for exactly the purposes they intended, as set forth in the application. The fact that their Gameday business was rolled in to a new entity along the way is merely an attempt to divert the Court's attention from the merits of Defendant's infringement. For the reasons above, the Court should reject this untimely distraction. VRP's registration is valid, and focus should remain on the facts surrounding likelihood of confusion.

### III. Defendant has Failed to Rebut the Overwhelming Evidence of Likelihood of Confusion.

Defendant's Response devotes only four pages to the likelihood of confusion analysis, and those four pages are almost entirely legal conjecture. VRP need not individually address each confusion factor on reply because Defendant has failed to unsettle the strength of VRP's likelihood of confusion evidence. However, a few points merit brief discussion.

#### A. Defendant's Pre-Litigation Letter is *Not* Covered by F.R.E. 408, and It *Does* Admit Confusion.

In an attempt to withdraw its prior admission of likelihood of confusion, Defendant suggests that its October 28, 2015 letter was an "offer of compromise" simply because it ends by stating that Defendant would like to avoid litigation. While that may have been the case, there was no "offer" in the letter. Rather, the letter expressly demanded that VRP "immediately cease and desist from further use of the name 'Vaystays,' as continued use thereof violates VSC's trademark rights and will damage VSC's brand, image and reputation." Demand letters are ***not*** covered by Fed. R. Evid. 408, and Defendant cites no authority for its suggestion to the contrary. The letter is admissible as a statement against interest, and shows that Defendant believed confusion between the respective marks was imminent.

Further, Defendant's attempt to explain its admission away as only a reaction to VRP's letter fails. There are many ways Defendant could have responded to VRP's letter. It chose, based on its mistaken conclusion about priority formed without consulting trademark counsel, to attempt to scare VRP away from VRP's legitimate claims. There is, of course, a consequence to that strategy if it fails. The strategy requires agreement that there is a likelihood of confusion. Defendant should not be allowed to elect this strategy and then avoid the consequence of its failure.

### B. Summary Judgment Does Not Require "Undisputed" Evidence On Each of the Seven Likelihood of Confusion Factors.

Defendant begins by accurately noting that the seven confusion factors must be considered "as a whole." ECF 43 at 11 (*citing Sorensen v. WD-40 Co*., 792 F.3d 712, 726 (7th Cir. 2015). But then, and without further citation, Defendant assigns a burden on VRP to show that each factor is undisputed. *Id*. at 12 ("VRP has failed to demonstrate that this factor is undisputed."); 13 ("VRP has not demonstrated that this factor unquestionably supports a finding of likelihood of confusion.") Though each of the seven factors *do* support a likelihood of confusion in this case, no such showing is required to warrant summary judgment, and the factors certainly need not all be "undisputed" or "unquestionable." *Cae, Inc. v. Clean Air Engineering, Inc*., 267 F.3d 660, 686 (7th Cir. 2001). VRP's burden is merely to show that no reasonable jury could review the evidence and conclude that confusion is unlikely. *Oest v. Ill. Dep't of Corrections*, 240 F.3d 605, 610 (7th Cir. 2001) ("Factual disputes are 'genuine' only if the evidence is such that a reasonable jury could return a verdict for the non-movant."). VRP has easily met that burden. Moreover, considering the evidence in a light most favorable to the non-movant (which Defendant repeatedly reminds the Court to do) is not akin to ignoring the evidence (which is what Defendant repeatedly does).

### C. The Similarity of the Marks is Obvious and Supported by the Evidence.

Defendant claims that VRP's evidence on the first confusion factor (similarity of the marks) is "replete with inaccurate and unsupported statements." ECF 43 at 13. Yet its only example is that VRP's official name is "Vacation Rental Partners," and not "Vaystays." This is a meaningless observation. VRP operates under the name "Vaystays," just as Defendant operates under the name "Vacaystays." This is different than if the marks were only used in association with a particular service, for example. Rather, they are the marks that consumers use to identify

- 11 -

the companies, making the fact that the names are confusingly similar that much more alarming. VRP's argument in this regard is not "inaccurate" or "unsupported."

Defendant's other critique as to the first factor is that "attorney argument does not support [VRP's] position" that "vay" and "vacay" both imply "vacation" when used in association with vacation rental services. *Id*. at 12. Yet, immediately preceding this critique, Defendant uses nothing but "attorney argument" to "submit that… 'vacay' has come to suggest 'vacation'." *Id*. The Court does not need a consumer survey or expert testimony to recognize the obvious connotation of VAY and VACAY in these marks, given their use.

### D. Defendant's Focus on Corporate Clients Does Not Erase the Evidence Showing How They Interact With Consumers.

The recurring theme in Defendant's single-paragraph responses to the second, third and fourth confusion factors[1] is that Defendant's clients are "commercial entities" (factor 2), "companies who interact with property owners" (factor 3), and "resort managers" (factor 4), rather than "individuals looking to rent property." *Id*. at 13-14. This repetitive argument fails for multiple reasons. First, as set forth in VRP's opening brief and 56.1 Statement, VRP also works with "commercial entities," "companies who interact with property owners" and "resort managers." Indeed, in many cases, they are the very same entities with whom Defendant works, such as Wyndham Resorts. Second, Defendant completely ignores the evidence in suggesting that it does not offer services to consumers. While Defendant may place higher value on its commercial relations than its consumer relations, the evidence clearly reflects that Defendant deals directly with "individuals looking to rent property." Defendant has a website at www.vacaystay.com that is designed specifically for this purpose, it operates a huge call center that assists consumers with their bookings, and the name VACAYSTAY appears on consumer

---

[1] The factors are (2) similarity of the services, (3) manner of concurrent use, and (4) degree of customer care.

credit cards when consumers book one of Defendant's numerous properties. There is significant service overlap (factor 2), offered through the same channels (factor 3), to unsuspecting consumers (factor 4) who cannot be expected to distinguish between two companies offering them vacation rental properties under confusingly similar names.

> E.     **VRP's Evidence of Actual Confusion is Admissible and Weighs Heavily in Favor of Summary Judgment.**

Defendant attempts to dismiss or explain away VRP's multiple examples of actual confusion, even going so far as to suggest that the actual confusion factor should weigh *against* a finding of likelihood of confusion. ECF 43 at 14-15. Even if there were a complete lack of actual confusion, this factor would be merely neutral. The marks have coexisted for less than two years, and both parties are still trying to grow and develop their market presence. The fact that there is ***already*** actual confusion evidence is alarming, and weighs heavily in VRP's favor. Moreover, the confusion is by sophisticated corporate clients. It is likely there is a much larger amount of confusion by vacation renters occurring, but going unreported.

Finally, Defendant makes a passing comment that VRP's evidence of actual confusion is hearsay, but stops short of suggesting it is inadmissible. It *is* admissible, because the communications are not being submitted for the truth of the matter asserted. For example, the automated email from Wyndham (PX-26, at ECF 38-8, p. 31 (public version)) does not say "I am confused." Rather, it is an email confirming that Wyndham activated Defendant for services. Whether or not Wyndham actually did so is irrelevant. The relevance is that Wyndham was *supposed* to be activating VRP. Many courts have found that emails and correspondence indicating actual confusion are not hearsay on the basis that they are not being offered to prove the truth of that which is communicated. *See, e.g., Int'l. Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1090-91 (7th Cir. 1988); *Am. Eagle Outfitters, Inc. v. Am. Eagle*

*Furniture, Inc*., 11-cv-2242, 2013 U.S. Dist. LEXIS 180912, *26-28 (N.D. Ill. 2013) (providing numerous examples where communications are not hearsay when offered to show actual confusion).

### V.    Conclusion

In summary, VRP has proven through discovery that Defendant did not use its VACAYSTAY mark in commerce prior to VRP's priority date provided through its federal registration, and Defendant's belated and un-plead challenge to that registration is without merit. Meanwhile, Defendant has failed to provide any contrary evidence that would tend to dispute VRP's strong and admissible evidence of likelihood of confusion. Indeed, Defendant previously *admitted* the likelihood of confusion. As a result, this Court should grant summary judgment and enjoin Defendant from further infringement of VRP's federally registered VAYSTAYS mark.

Respectfully submitted,

Date: September 6, 2016                                 By:       s/Mike R. Turner/
                                                                                  One of the Attorneys for Plaintiff,
                                                                                 Vacation Rental Partners, LLC.

                                                                                  Michael G. Kelber
                                                                                  Mike R. Turner
                                                                                  Andrea S. Fuelleman
                                                                                  Neal, Gerber & Eisenberg LLP
                                                                                  Two North LaSalle Street, Suite 1700
                                                                                  Chicago, Illinois  60602
                                                                                  Telephone: (312) 269-8000

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 6, 2016, a copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** was served on all counsel of record for Defendant Vacaystay Connect, LLC, via the Court's Electronic Filing System:

>Lawrence J. Crain
>Steven P. Fallon
>Jessica L. Bloodgood
>GREER, BURNS & CRAIN, LTD.
>300 South Wacker Drive, Suite 2500
>Chicago, Illinois 60606
>Tel: (312) 360-0080
>lcrain@gbclaw.net
>sfallon@gbclaw.net
>jbloodgood@gbclaw.net


>s/Andrea S. Fuelleman/
>Andrea S. Fuelleman

25142958.2