VACATION RENTAL PARTNERS, LLC,

   Plaintiff,

  v.

VACAYSTAY CONNECT, LLC,

   Defendant.

No. 15 CV 10656

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Vacation Rental Partners, LLC, alleges trademark infringement and related claims against VacayStay Connect, LLC, arising out of the companies' respective VAYSTAYS and VACAYSTAY marks. Vacation Rental moves for summary judgment on all of its claims, except for Count III (a claim under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)). For the following reasons, the motion is granted.

## I. Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Justifiable inferences are drawn in the nonmovant's favor, *id.* at 255, and the party seeking

summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II. Background[1]

Gameday Housing, LLC was formed in 2006. [50-1] ¶ 2.[2] Its business involved the online advertisement and booking of vacation and temporary rental properties. [50-1] ¶ 3. Initially, Gameday focused on properties near college campuses on weekends coinciding with major sporting events but eventually expanded its business to include other types of vacation rentals. [50-1] ¶ 3. Gameday intended to maintain its www.gamedayhousing.com website but also launch a new website at www.vaystays.com for luxury vacation rentals; it acquired www.vaystays.com in December 2013. [44] ¶ 11; [50-1] ¶¶ 3, 9. On February 12, 2014, Gameday filed a federal intent-to-use trademark application, Serial No.

---

[1] Bracketed numbers are entries on the district court docket. VacayStay's response to Vacation Rental's Local Rule 56.1 statement of facts is [44]. Vacation Rental's response to VacayStay's statement of additional facts is [50]. When disputing Vacation Rental's Rule 56.1 statements, VacayStay's responses are not concise, as required by Local Rule 56.1, but in many instances comprise several pages. Instead of briefly stating the point of disagreement and citing to controverting evidence, VacayStay extensively quotes the evidence cited by Vacation Rental—often not objecting to the contents of that evidence but instead merely pointing out that Vacation Rental's statements summarize it. VacayStay also repeatedly objects that Vacation Rental's statements of facts contain "multiple distinct statements such that a response to the whole is not possible." Vacation Rental's statements, however, are not lengthy or convoluted. Such nit-picking obstructs the goal of Local Rule 56.1, which is to permit the district court to identify at summary judgment which material facts are in dispute. The parties' Rule 56.1 statements and responses are viewed with this principle in mind. Unless otherwise noted, the facts related below are undisputed or are considered undisputed because the responding party did not properly controvert the factual statement as required by local rule.

[2] [50-1] is a declaration filed in support of Vacation Rental's reply brief, addressing the circumstances of Gameday's assignment of its intent-to-use application for the VAYSTAYS mark. Vacation Rental contends that it was unaware that the validity of the assignment was in question until VacayStay's response brief. VacayStay did not object to this filing or request a sur-reply, and the declaration is considered with the rest of the factual record.

86/192,191, for the VAYSTAYS mark. [44] ¶ 12. The following month, the owners of Gameday formed a new entity, named Vacation Rental Partners, LLC. [50-1] ¶ 4. Gameday assigned its intent-to-use application to Vacation Rental, effective May 6, 2014 (although the assignment was not executed until September 11, 2014). [44] ¶ 12; [50-1] ¶¶ 3–5. Through a Contribution and Exchange Agreement dated May 7, 2014, Gameday's owners exchanged their interest in Gameday for interest in Vacation Rental, and Gameday was dissolved shortly thereafter. [50-1] ¶¶ 5–6.[3] Vacation Rental also kept Gameday's business location and employees. [50-1] ¶¶ 5–7.

Vacation Rental filed a statement of use on October 28, 2014, and on February 24, 2015, the application issued as U.S. Registration No. 4,693,380. [44] ¶ 14.[4] Among other things, the registration covers real estate listings and rental services for short-term and vacation property rentals. [44] ¶ 16. In connection with the VAYSTAYS mark, Vacation Rental serves a variety of property suppliers, from individual property owners to large hotel companies (such as Wyndham Hotels & Resorts). [44] ¶ 18. Through www.vaystays.com, Vacation Rental offers these

[3] VacayStay argues that no "asset purchase" agreement was produced in discovery but Vacation Rental asserts that the Contribution and Exchange Agreement was produced and shows the rollover of Gameday into Vacation Rental. There is no dispute as to the authenticity of the agreement, and, as VacayStay concedes, the record also includes testimony from the companies' owners as to the transfer of assets from Gameday to Vacation Rental.

[4] Originally, this October filing stated that the date of first use in commerce was June 2014. In June 2016, Vacation Rental filed a Section 7 request to amend the date of its first use in commerce to October 28, 2014, although Vacation Rental cites evidence that it began using the VAYSTAYS mark for consumer bookings in June 2014. [43-2]; [44] ¶ 13; [50] ¶ 10. VacayStay mentions the amendment but does not argue that Vacation Rental's registration was abandoned or fraudulently obtained.

properties to consumers for direct bookings. Vacation Rental also advertises and distributes properties through third-party websites such as www.homeaway.com and www.vrbo.com. [44] ¶¶ 17–18. When a consumer books a Vacation Rental property through a third-party website (e.g., Homeaway or VRBO), Vacation Rental handles the transaction and uses the VAYSTAYS mark in connection with the booking. [44] ¶¶ 17, 49. The VAYSTAYS mark appears on Vacation Rental's property listings, including listings on third-party websites, and Vacation Rental also uses its mark in communications with property managers and owners, and at trade shows. [44] ¶¶ 17–18.

Defendant VacayStay Connect, LLC, also provides vacation rental services to property suppliers (including property owners, property managers, and resorts) and consumers who book the properties. [44] ¶ 35. The company was founded in December 2011 as Vacation Storebuilder, LLC. [44] ¶ 20. A few months prior to its founding, in September 2011, Vacation Storebuilder registered www.vacaystay.com. [44] ¶ 29. The website was placed under password protection because Vacation Storebuilder was focusing on property rental distribution through third-party channels, rather than using its own site to directly interact with consumers. [44] ¶¶ 29–34. The parties dispute whether www.vacaystay.com has been consistently password protected or if it was ever open to the public. For example, some employees of Interval International had password access to the website, and there are screenshots indicating VacayStay may have made it available to the public for a brief period after Vacation Rental filed suit. [44] ¶¶ 29–34.

On September 30, 2014, Vacation Storebuilder changed its name to VacayStay Connect. [44] ¶ 21. In the weeks leading up to the name change, Vacation Storebuilder also registered two new websites: www.vacaystayconnect.com and www.vacaystaystorebuilder.com. [44] ¶ 36. VacayStay still operates these websites, and both use logos prominently featuring the VACAYSTAY mark. [44] ¶¶ 37–38.

VacayStay distributes rental properties through Homeaway and other third-parties, working with property suppliers (individual homeowners, property managers, innkeepers, resorts, and property management companies) and consumers who book properties. [44] ¶¶ 35, 39, 44. VacayStay uses its VACAYSTAY mark while listing properties on third-party sites, including Homeaway and VRBO, and uses the VACAYSTAY mark while handling consumers' bookings. [44] ¶¶ 41, 43. VacayStay also works with Wyndham Hotels & Resorts. [44] ¶ 44. Both Vacation Rental and VacayStay compete for similar vacation rental inventory and corporate suppliers (such as Wyndham). [44] ¶¶ 44, 48.

Around 2012 and 2013, when VacayStay was still operating under the name Vacation Storebuilder, it contracted with Interval International to develop a distribution platform for Interval's inventory of vacation rental properties. [44] ¶¶ 22–23. The first end-to-end booking on this platform occurred in May 2014, although the parties dispute whether the booking was merely a test booking for Interval or whether it involved an actual consumer reservation. [44] ¶ 24. (VacayStay does not argue or cite evidence to show that this May 2014 booking used

the VACAYSTAY mark. The email confirmation shows "Vacation Storebuilder," not VACAYSTAY.) By September 16, 2014, however, VacayStay had a consumer reservation for a vacation rental, with the booking confirmation generated by reservations@vacaystay.com. [44] ¶ 24; [50] ¶ 12.[5]

Vacation Rental first learned of www.vacaystayconnect.com in August 2015. [44] ¶ 19. At an industry exhibition a few months later, a potential third-party distributor confused Vacation Rental's representative and marketing materials (bearing the VAYSTAYS mark) with VacayStay's representative and materials (bearing the VACAYSTAY mark), which he had seen earlier in the day. [44] ¶ 47. By November 2015, Vacation Rental sued VacayStay for trademark infringement. [1]; [21]; [44] ¶ 45. VacayStay brought counterclaims for trademark infringement of its VACAYSTAY mark and for cancellation of Vacation Rental's mark. [22]. These counterclaims were dismissed without prejudice because VacayStay failed to allege any commercial bookings prior to February 12, 2014 (Vacation Rental's priority date)—at most, VacayStay's counterclaim alleged pre-marketing maneuvers insufficient to establish rights in a trademark. [32]. VacayStay did not move for leave to replead and never pled any affirmative defenses. After discovery, Vacation Rental moved for summary judgment on all claims except for Count III (a claim under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)). [35].

---

[5] These May and September 2014 bookings were submitted to the court under seal as "PX10" and "PX17," respectively, but were not filed on the docket. Any document previously submitted under seal and referenced in this opinion shall be unsealed (and filed on the docket). The parties shall file a joint statement listing the applicable docket entries, and the Clerk's Office will then be directed to unseal those entries on the court's CM/ECF system. *See City of Greenville, Ill. v. Syngenta Crop Prot., LLC*, 764 F.3d 695, 697 (7th Cir. 2014).

## III. Analysis

Vacation Rental seeks summary judgment on its claims against VacayStay for trademark infringement under the Lanham Act (15 U.S.C. § 1114(1)(a)), unfair competition under the Lanham Act (15 U.S.C. § 1125(a)(1)(A)), violating the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq*.), and violating the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq*.). To prevail on either claim under the Lanham Act, a plaintiff must show (1) that its mark is protectable, and (2) that the defendant's use of that mark is likely to cause confusion among consumers. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673 (7th Cir. 2001). The state law claims are also analyzed under the likelihood of confusion standard and mirror the infringement analysis. *See AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993); *Aliano v. Ferriss*, 2013 IL App (1st) 120242, ¶ 23; *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill.App.3d 849, 865 (1st Dist. 2008).

Vacation Rental maintains that its federal trademark registration is prima facie evidence of its mark's validity and that the factual record demonstrates likelihood of confusion. VacayStay responds that Vacation Rental's trademark registration is void because the intent-to-use application was invalidly assigned and because VacayStay has priority of use. VacayStay also contends that there is a genuine factual dispute as to likelihood of confusion.

### A. Vacation Rental's VAYSTAYS Mark Is Protectable

Whether a party has established protectable rights in a trademark is a case-by-case determination under the totality of the circumstances. *Johnny Blastoff, Inc.*

*v. Los Angeles Rams Football Co.*, 188 F.3d 427, 433 (7th Cir. 1999). A party may acquire a protectable right in a trademark only through use of the mark in connection with its product or service. *Id.* Federal registration of a mark is prima facie evidence of the validity and ownership of the mark, as of the application date. 15 U.S.C. § 1057(b); 15 U.S.C. § 1115(a); 2 McCarthy on Trademarks & Unfair Competition § 16:19 (4th ed.). Vacation Rental rests on its application and registration as prima facie evidence of its mark protectability and priority as of February 12, 2014. (VacayStay does not dispute that February 12, 2014 is Vacation Rental's nationwide priority date for the VAYSTAYS mark. [44] ¶ 15.) But "[r]egistration itself establishes only a rebuttable presumption of use as of the filing date," and a trademark application is always subject to previously established common law trademark rights of another party. *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 504 (7th Cir. 1992). An alleged infringer has the burden to rebut the presumption of a registered mark's validity. *Publications Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 340 (7th Cir. 1998).

### 1. *VacayStay's Unpled Affirmative Defense Is Not Waived*

As a threshold issue, Vacation Rental contends that VacayStay waived its affirmative defense to the validity of the VAYSTAYS trademark registration by failing to plead it as an affirmative defense and instead waiting until summary judgment to attack its validity. VacayStay argues that: (1) VacayStay used its mark in commerce in May and September 2014, before Vacation Rental's first use in commerce in October 2014, and (2) Gameday invalidly assigned the intent-to-use application to Vacation Rental, in violation of 15 U.S.C. § 1060(a)(1).

Federal Rule of Civil Procedure 8(c) requires affirmative defenses to be pled. Because federal registration is prima facie evidence of the validity of the VAYSTAYS mark and ownership, challenging that validity is an affirmative matter outside the scope of Vacation Rental's prima facie case—it is VacayStay's burden to prove as an affirmative defense or counterclaim. *See, e.g., Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1326 (Fed. Cir. 2008) ("Invalidity of the mark was an affirmative defense that could have been raised, not part of the plaintiff's cause of action [for trademark infringement]."); *Publications Int'l*, 164 F.3d at 340 ("[R]egistration creates a presumption of validity, implying that the defendant has the laboring oar on all issues relating to validity.").

While a defendant's failure to plead an affirmative defense may waive it, *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 334 (7th Cir. 1987), courts find waiver of a defense "only if the plaintiff is harmed by the defendant's delay in asserting it." *Matthews v. Wisconsin Energy Corp., Inc.*, 642 F.3d 565, 570 (7th Cir. 2011) (marks omitted). Vacation Rental argues that it was harmed by the delay because, during discovery, it was unaware that these arguments would be raised. VacayStay's current priority argument is different than the priority argument formerly asserted in its counterclaims. But Vacation Rental was sufficiently aware of possible priority disputes and had the opportunity to prepare for this issue during discovery.

The argument that Vacation Rental's trademark was invalidly assigned, however, was not pled or alluded to in any way until VacayStay's summary

judgment response brief. This argument should have been pled as an affirmative defense. But Vacation Rental was able to sufficiently confront the issue in its reply brief (and by submitting an additional declaration) and therefore was not prejudiced by VacayStay's delay in raising it. Although VacayStay's decision to spring its affirmative defense in its response brief was ill-advised, the validity of Vacation Rental's trademark registration will be addressed on its merits. To defeat summary judgment on the protectability of the VAYSTAYS mark based on its affirmative defense, VacayStay must come forward with evidence showing the existence of a genuine factual dispute that, if successful, would invalidate Vacation Rental's registration.

## 2. *Vacation Rental Has Priority of Use*

VacayStay has not shown a genuine issue of material fact to rebut Vacation Rental's priority of use. VacayStay asserts that it used its VACAYSTAY mark in commerce in May 2014, five months prior to Vacation Rental's first use of the VAYSTAYS mark in commerce. There are two problems with this argument. First, by filing its intent-to-use application and obtaining federal registration, Vacation Rental established constructive use of the trademark nationwide, 15 U.S.C. § 1057(b), meaning that as of the date of the application (February 12, 2014), Vacation Rental "establishe[d] a priority date with the same legal effect as the earliest actual use of a trademark at common law." 2 McCarthy on Trademarks & Unfair Competition § 16:17 (4th ed.). Notably, VacayStay does not dispute that Vacation Rental's priority date is February 12, 2014, [44] ¶ 15, and makes no argument that it used the VACAYSTAY mark in commerce prior to that date.

Indeed, VacayStay's counterclaim was dismissed because it lacked allegations that the mark was used in commerce before Vacation Rental's priority date.

"Registration itself establishes only a rebuttable presumption of use as of the filing date," *Zazu Designs*, 979 F.2d at 504, but VacayStay has not shown that it can rebut this presumption by showing sufficient use in commerce prior to either Vacation Rental's filing date or statement of use. VacayStay's use of its unregistered mark occurred after Vacation Rental's filing date and, prior to October 2014, amounted to token use at that. *See id.* (token use of an unregistered mark is not enough to acquire rights). Viewing the record in VacayStay's favor, it completed its first end-to-end booking on the Interval platform in May 2014 and completed its first consumer reservation in mid-September 2014. The September booking used the VACAYSTAY mark, but VacayStay has not shown or argued that the May booking actually involved use of the VACAYSTAY mark (as opposed to its old Vacation Storebuilder name). Even assuming both bookings were sales using the VACAYSTAY mark, they are insufficient to establish priority over Vacation Rental. Two bookings (four months apart) are simply not enough to link the VACAYSTAY mark with VacayStay's services in the minds of consumers, nor put other businesses on notice of VacayStay's unregistered mark. *See, e.g., Zazu Designs*, 979 F.2d at 503 (a few shampoo bottles sold over the counter and mailed out of state were insufficient to establish priority for unregistered mark).[6]

---

[6] Beginning in March 2014 and extending into 2015, VacayStay also attended trade shows to market its services under the VACAYSTAY mark, acquired several large resort rental distribution accounts, and spent considerable sums advertising under the VACAYSTAY

### 3. *Gameday's Assignment Was Valid*

VacayStay also argues that Vacation Rental's registration is void because the intent-to-use application for the VAYSTAYS mark was invalidly assigned, in violation of 15 U.S.C. § 1060(a)(1). An anti-trafficking provision in the Lanham Act, § 1060(a)(1) specifies that, prior to the filing of a statement of use, an intent-to-use application can only be assigned "to a successor to the business of the applicant, or portion thereof, to which the mark pertains, if that business is ongoing and existing." As described in the legislative history, this provision was designed "to prohibit assignments of intent-to-use applications unless the application is assigned with the business associated with the intended use of the mark." S. Rep. No. 100-515, at 25 (1988); *see* 3 McCarthy on Trademarks & Unfair Competition § 18:13 (4th ed.) ("If there is an 'ongoing and existing' business, [§ 1060(a)(1)] permits even an intent to use application to be sold, but only to one who also buys the whole 'business' associated with that mark."). An invalid assignment voids the underlying application and resulting registration. *Sebastian Brown Prods. LLC v. Muzooka Inc.*, No. 15-CV-01720-LHK, 2016 WL 949004, at *8 (N.D. Cal. Mar. 14, 2016).

Section 1060(a)(1) requires, then, that the assignee (Vacation Rental) be a successor of an ongoing and existing business (Gameday) to which the mark pertains. VacayStay argues that that Vacation Rental is not a successor to

---

mark. [44] ¶ 52. But VacayStay does not argue that these marketing efforts are material facts disputing Vacation Rental's priority, *see* [43] at 8–9, and traditionally, advertising a mark prior to the actual product sales or rendering of services is not "use in commerce" sufficient to establish priority. 2 McCarthy on Trademarks and Unfair Competition § 16:12 (4th ed.).

Gameday, that "ongoing and existing business" requires the assignor to have actually used the mark in commerce, and that Vacation Rental was not a "ongoing and existing" business before the assignment. These arguments are not persuasive.

Based on the undisputed record, Vacation Rental is a successor to the entire business of Gameday, which was ongoing and existing at the time of the assignment. The entirety of Gameday's business was rolled into Vacation Rental— its owners, assets, business location, and employees. *See, e.g., Marshak v. Green*, 746 F.2d 927, 930 (2d Cir. 1984) (factors showing transfer of business and goodwill with trademark include "continuity of management" and assignee producing product or providing services substantially similar to that of the assignor); *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 676 (7th Cir. 1982) (transfer of assets or assignee's provision of similar products or services shows transfer of goodwill with mark). Although VacayStay quibbles that the assignment does not mention the transfer of other assets or goodwill, VacayStay does not identify any authority requiring the transfer of assets or goodwill in the assignment agreement itself— instead, cases look to the overall facts and circumstances of the assignment. Here, although executed several months later, the assignment was backdated to coincide with Gameday's rollover into to Vacation Rental, after which Gameday was dissolved.

VacayStay also argues that the assignment was invalid because Gameday was not an "ongoing and existing" business at the time of transfer. VacayStay interprets "ongoing and existing" business to mean that the business used the mark

in commerce. Some courts have interpreted § 1060(a)(1) this strictly. *See Greene v. Ab Coaster Holdings, Inc.*, No. 2:10-CV-234, 2012 WL 4442749, at *9–10; *Sebastian Brown*, 2016 WL 949004, at *10–12. In *Railrunner N.A., Inc. v. New Mexico Department of Transportation*, Opposition No. 91172851, 2008 WL 8973295 (T.T.A.B. July 17, 2008), the Trademark Trial and Appeal Board voided an intent-to-use application that was assigned before a statement of use was filed. The Board's decision rested on the applicant's failure to provide any explanation of the facts and circumstances of the assignment to show transfer of any assets other than the application itself. *Id.* at *6. But the Board also mentioned in passing that because § 1060(a)(1) requires intent-to-use applications to be transferred (if prior to a statement of use) with at least that part of the applicant's business to which the mark pertains, such a transfer "is only permissible if the applicant actually has such a business, *i.e.*, if the applicant is already providing the goods or services recited in the application." *Id.* at *2.

However, only a few months after deciding *Railrunner*, the Board clarified in *Exel Oyj v. D'Ascoli*, Opposition No. 91160397, 2008 WL 4354180 (T.T.A.B. Sept. 19, 2008) (non-precedential), that requiring an intent-to-use applicant to be using the mark in at the time of the assignment would be reading § 1060(a)(1) "in a manner that would be inconsistent with the intent behind" allowing trademark applications based on an intent-to-use. *Id.* at *7. The Board stated:

> The statute cannot be read to require, as a precondition for assignment of an intent to use application, that there be an ongoing and existing business, or portion thereof, for each of the goods in an intent to use application. Rather, we consider the statute as allowing for assignment

of intent to use applications when (i) the overall business of the applicant was transferred, or (ii) if the intent to use applicant remained an "ongoing and existing" business after the assignment, the portion thereof to which the mark pertains was transferred. The statute must allow for the transfer of a[n intent to use] application claiming a bona fide intention to use the mark for goods which are not yet in production or which may be in the planning stage, and which may represent an extension of an applicant's business. The statute does not require that the mark ultimately must be used on each of the goods identified in the application that has been transferred lest the assignment, ex post facto, be rendered invalid. The anti-trafficking provision of the statute merely requires that if the application is transferred prior to use of the mark, and the transferor remains an ongoing and existing business after the transfer, that the transfer be accompanied by that portion of the transferor's business to which the mark pertained, i.e., that portion of the business that would have used the mark had there been no transfer.

*Id*. This reasoning makes sense. Section 1060(a)(1) was designed to allow assignment of intent-to-use applications before actual use—the provision prohibits assignments unless the application is "assigned with the business associated with the *intended* use of the mark." S. Rep. No. 100-515, at 25 (1988) (emphasis added). As explained in *Exel*, the point of the statute was to allow for the transfer of an intent-to-use application "claiming a bona fide intention to use the mark *for goods which are not yet in production or which may be in the planning stage,* and which may represent an extension of an applicant's business." 2008 WL 4354180, at *7 (emphasis added). Prior to filing a statement of use, an applicant may not have actually used the mark in commerce yet, but it may have goodwill or existing business tied to the mark (e.g., relationships based on planned use of the mark)— that is enough to ensure that a trademark has no existence separate from the product or service it symbolizes. *See* S. Rep. No. 100-515, at 31 (1988) ("[Section 1060(a)(1)] is consistent with the principle that a mark may be validly assigned only

with the business or goodwill attached to the use of the mark."). Vacation Rental has shown that there is no genuine dispute of material fact that, as of the assignment, it was the successor to Gameday's ongoing and existing business pertaining to the VAYSTAYS mark. By that point in time, Gameday had registered www.vaystays.com, had hired several employees (including a web developer and salespeople to market the VAYSTAYS brand), and was attempting to get property listings to market as vacation rentals. [43-1] at 5–6; [44] ¶ 11.

VacayStay also argues that "ongoing and existing" business requires not only that *Gameday*—the applicant—had some business, but that *Vacation Rental* itself was an ongoing and existing business prior to the assignment. This argument misreads § 1060(a)(1) and its associated case law, which make clear that the ongoing and existing business must pertain to the mark and be transferred with the application because it is the manifestation of the goodwill associated with the intended use of the mark. It is irrelevant that Vacation Rental was not formed until the mark was transferred, as long as it received the existing business to which the mark pertained. Also, the testimony VacayStay cites to show that Vacation Rental was not yet in business indicates merely that, in May 2014, Vacation Rental did not yet have an actual customer booking for a vacation rental property. *See* [43-1] at 5–6. But actual use in commerce is not required under § 1060(a)(1).

VacayStay has not shown a genuine issue of material fact to rebut the presumption that Vacation Rental's VAYSTAYS mark is validly registered and therefore protectable. The remaining question for summary judgment is whether

there is a genuine issue of material fact over a likelihood of confusion between the VAYSTAYS and VACAYSTAY marks.

## B.    There Is A Likelihood of Confusion

Ordinarily, "likelihood of confusion" is question of fact, but it "may be resolved on summary judgment if the evidence is so one-sided that there can be no doubt about how the question should be answered." *CAE*, 267 F.3d at 677 (marks omitted). The likelihood of confusion is determined by a balancing test that looks to seven factors: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists; and (7) whether the defendant intended to "palm off" his product as that of the plaintiff. *Id*. at 678. No single factor is dispositive, but the three most important factors are: the similarity of the marks, the defendant's (bad faith) intent, and evidence of actual confusion. *Id*.

Vacation Rental argues that VacayStay has already admitted the likelihood of confusion, through a pre-litigation desist letter and its (now-dismissed) counterclaims. The pre-litigation desist letter from VacayStay stated that "it would appear from [Vacation Rental's] letter . . . that Vacation Rental Partners' use of the mark 'Vaystays' is causing substantial confusion in the market place, and violates the common law trademarks rights of [VacayStay]," and the letter demanded that Vacation Rental immediately cease and desist from using VAYSTAYS, "as continued use thereof violates [VacayStay's] trademark rights and will damage [VacayStay's] brand, image and reputation." [38-8] at 18. VacayStay's infringement

counterclaims similarly stated that Vacation Rental's use of the VAYSTAYS mark "is likely to deceive and cause confusion, mistake and deception among consumers or potential consumers as to the source or origin of [VacayStay's] services and the sponsorship or endorsement of those services by VacayStay." [22] at 26, ¶ 19.

Viewing all inferences in VacayStay's favor, as the nonmovant, VacayStay's counterclaim is not an admission of the likelihood of confusion. Looking at both VacayStay's counterclaim and its answer to Vacation Rental's complaint, VacayStay was pleading likelihood of confusion in the alternative. *See, e.g., Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999) (Rule 8 "offers sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party."); *Douglas Equip., Inc. v. Mack Trucks, Inc.*, 471 F.2d 222, 224 (7th Cir. 1972) (assertion in third-party complaint was an alternative pleading, not an admission); *Continental Ins. Co. v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971) ("[O]ne of two inconsistent pleas cannot be used as evidence in the trial of the other."); 30B Fed. Practice & Procedure Evid. § 7026 (2014 ed.) ("[A]n admission in one alternative in the pleadings in the case does not nullify a denial in another alternative as a matter of pleading" because "the purpose of alternative pleadings is to enable a party to meet the uncertainties of proof, [so] policy considerations demand that alternative pleadings not be admitted . . . as an admission of a party-opponent.").

The admissibility of VacayStay's letter is a closer call. A cease and desist letter may be excluded from the protections of Federal Rule of Evidence 408 if it

does not contain any suggestion of compromise. *See, e.g., Sunstar, Inc. v. Alberto-Culver Co.*, No. 01 C 0736, 2004 WL 1899927, at *22 (N.D. Ill. Aug. 23, 2004). The majority of VacayStay's letter does not suggest compromise and instead disputes Vacation Rental's priority, contends that VacayStay has priority in its mark, and demands that Vacation Rental stop use of the VAYSTAYS mark. But the conclusion of the letter states that VacayStay was interested in resolution "without litigation" and refers to hearing from Vacation Rental soon, [38-8] at 18, which could be read as an invitation to settle the parties' competing infringement positions. It is a close question, but the purpose of Rule 408 is "to encourage settlements which would be discouraged if such evidence were admissible." Fed. R. Evid. 408, Advisory Comm. Note. VacayStay's letter has enough to suggest an interest in settlement so as to be inadmissible under Rule 408.

Even without VacayStay's admission of the likelihood of confusion, the factual record in this case is so one-sided that summary judgment for Vacation Rental is appropriate.

### 1. *VacayStay's Intent*

Vacation Rental argues that VacayStay's bad faith intent is evidenced through its attempt to drive Vacation Rental from the market through threats and expansion—for example by threatening suit and, after Vacation Rental filed suit, by unveiling www.vacaystay.com to compete with www.vaystays.com. There is no evidence, however, that VacayStay was aware of Vacation Rental's VAYSTAYS mark when it created its own VACAYSTAY mark around the same time. Although VacayStay's vacation rental business under the VACAYSTAY may have largely

expanded after Vacation Rental's VAYSTAYS trademark registration, Vacation Rental's examples do not necessarily show that VacayStay intended to palm off its vacation rental properties and services as Vacation Rental's properties and services, instead of merely aggressively protecting its own unregistered mark. This factor does not weigh heavily in Vacation Rental's favor. But, although proof of intent is a "particularly important" factor in the likelihood-of-confusion analysis, *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008), it "is not necessary to prove trademark infringement." *CAE*, 267 F.3d at 686.

### 2. *Strength of the VAYSTAYS Mark*

Another weak factor for Vacation Rental is the strength of the VAYSTAYS mark. "The 'strength' of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." *CAE*, 267 F.3d at 684. "The stronger the mark, the more likely it is that encroachment on it will produce confusion." *AutoZone*, 543 F.3d at 933. A mark's strength ordinarily corresponds to its economic and marketing strength. *Id*. Vacation Rental offers little evidence on the economic or marketing strength of its mark, other than to point out that its mark strongly suggests the idea of a place to stay on vacation, that VacayStay could only identify one other company using a similar mark (VAYCAYHERO), and that Vacation Rental has successfully attracted inventory from corporate clients such as Wyndham Hotels & Resorts. In absence of evidence of Vacation Rental's economic and marketing strength, and in the face of Vacation Rental's concession that VacayStay is the larger company, this is not a factor in Vacation Rental's favor.

### 3. *Consumers' Degree of Care*

The remaining factors, however, weigh in favor of finding a likelihood of confusion. There is an increased likelihood of confusion when consumers are less likely to exercise a degree of care and discrimination in their purchases. *CAE*, 267 F.3d at 683. The more widely accessible and inexpensive the products or services, the more likely consumers are to use a lesser degree of care in discerning between marks. *Id*. While not necessarily inexpensive, the vacation rental market is largely conducted over the internet, [44] ¶ 8, meaning that it is widely accessible. *See CAE*, 267 F.3d at 683 (products offered on internet were widely accessible). And it is not uncommon for the same vacation property to be listed on multiple websites simultaneously, [44] ¶ 8, which could also increase the likelihood of confusion about the source of the vacation rental properties. *See, e.g., Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 596 (5th Cir. 1985) (lack of customer care in product purchase coupled with extensive advertising increased likelihood of confusion). VacayStay argues that its "real" clients are sophisticated corporate property suppliers—not consumers who book the advertised properties—who are more likely to exercise a high degree of care. But, as detailed further below, Vacation Rental has identified instances where sophisticated corporate clients confused the two marks, suggesting that customer sophistication has little weight in this case. *See, e.g., CAE*, 267 F.3d at 683 (customers' technical sophistication about their industry does not necessarily equate to trademark sophistication).

### 4. *Similarity of Services*

A likelihood of confusion may exist even if the parties are not in direct competition or if their products and services are not identical. *CAE*, 267 F.3d at 679 "Closely related products are those that would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner." *Id.* (marks omitted); *see AutoZone*, 543 F.3d at 931 ("[O]ur inquiry in comparing the two products is not whether they are interchangeable, but whether the parties products are the kind the public might very well attribute to a single source (the plaintiff).") (marks omitted). Here, it is undisputed that both parties offer temporary vacation or property rental services, first by obtaining suitable properties from suppliers (e.g., property owners, corporate clients) and then using the internet to offer the properties to consumers for booking. VacayStay argues that it does business with commercial and corporate entities, who it considers its true clients—as opposed to property renters, who admittedly pay VacayStay to book the properties—but Vacation Rental also has corporate clients as property suppliers. Even if VacayStay focuses more on corporate clients, the parties' services and clients sufficiently overlap to suggest a likelihood of confusion. *See CAE*, 267 F.3d at 678–79 (affirming summary judgment for trademark registrant where some of the infringer's products and services overlapped with the registrant's).

### 5. *Similarity of Concurrent Use*

The concurrent-use factor assesses "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *CAE*,

267 F.3d at 681. Courts "look to whether the parties use the same channels of commerce, target the same general audience, or use similar marketing procedures." *Id*. at 682. Here, Vacation Rental and VacayStay use the same channels of commerce, distributing (i.e., listing) vacation rental properties through the internet. Both use the third-party websites VRBO and Homeaway (among others), although Vacation Rental also offers direct bookings through its website. The companies use their marks in a similar manner—identifying and promoting vacation and temporary property rentals. They also target "the same general audience," *id*., including the same property suppliers (such as Wyndham Hotels & Resorts) and the same consumer market for vacation rental bookings on the internet. The companies even attend the same trade shows. VacayStay does not dispute that the parties both advertise properties through third-party websites (e.g., Homeaway). To dispute use, VacayStay submitted a declaration from its chief operating officer to show that Vacation Rental distributes property listings through a third-party, LeisureLink, which is a known competitor of VacayStay. [43-3] at ¶¶ 6–7. VacayStay contends that this shows that Vacation Rental uses a different channel than VacayStay to advertise rental properties. But it actually confirms that the parties target the same competitive market, even if they sometimes use different third-parties to list properties.

6. *Similarity of Marks*

In the likelihood of confusion analysis, two of the three most important factors—similarity of the marks and actual confusion—weigh most heavily in favor of finding a likelihood of confusion in this case. Marks are viewed as a whole and

are compared "in light of what happens in the marketplace and not merely by looking at the two marks side-by-side." *AutoZone*, 543 F.3d at 929–30. "[T]he test is not whether the public would confuse the *marks*, but whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *Id.* at 930. Viewed from this perspective, the VAYSTAYS and VACAYSTAY marks are similar.

Both companies use their respective marks in the text of their website addresses (www.vaystays.com, www.vacaystay.com, www.vacaystayconnect.com, www.vacaystaystorebuilder.com), to identify their vacation rental businesses to property suppliers (including at trade shows and as property account names for activation by corporate suppliers), and to identify their companies' vacation rental services and affiliated property listings to consumers (on distributor websites and during the booking process). The only difference between the text of the two marks is the extra syllable "ca" and the plural versus singular form. For trademarks, a difference in plural versus singular form is not material. *See, e.g., Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47–48 (2d Cir. 1978); *Virginia Polytechnic Inst. & State Univ. v. Hokie Real Estate, Inc.*, No. 7:10CV00466, 2011 WL 926862, at *6 (W.D. Va. Mar. 15, 2011). Both parties' marks share the term "stay," preceded by "vay" or "vacay," which appear to be shortened variants of "vacation." These terms imply an association with the temporary and vacation rental nature of both companies' services. VacayStay argues that Vacation Rental

did not submit any consumer evidence to support the similarity between "vay" and "vacay" and their association with the idea of "vacation," but those observations are apparent on the face of the terms. VacayStay makes no argument or suggest another reasonable inference from those terms. The only reasonable inference is that the marks were designed for consumers to associate VAYSTAYS and VACAYSTAY marks with a place to "stay" on "vacation."

VacayStay also contends that the marks, when displayed on the internet, are visually dissimilar. VacayStay does not, however, describe the visual dissimilarity between the marks or expand on this argument, and it is not the court's responsibility to fill in the gaps in VacayStay's legal arguments. A review of the examples of the parties' logos, as attached to the complaint and in the summary judgment record, show that in some instances the marks are visually similar—e.g., all caps, in a sans-serif font. *Compare* [21-2] at 2; *with* [21-4] at 2. In other instances, the marks differ slightly. For example, VAYSTAYS is sometimes depicted capitalized, in black, accompanied by the small symbol of a lion's head, while VACAYSTAY is in letter case ("VacayStay") in green and/or blue. In some instances, "VacayStay" is accompanied by another word in blue (such as CONNECT, DISTRIBUTION, or STOREBUILDER), and/or a stacked-diamond symbol or a dotted line overhead. *Compare* [38-2] at 6–13; *with* [21-4] at 2; [21-6] at 2; [21-8] at 2–3; [22-3] at 2–5; [38-4] at 4–8; [38-8] at 22–30. While there are visual differences between certain depictions of the marks, none of the differences serve to distinguish the marks from each other and they are similar enough (and similarly placed on

websites, as a header or small icon near the property listing) as to weigh in favor of likelihood of confusion.

### 7. *Actual Confusion*

"[E]vidence of actual confusion, if available, is entitled to substantial weight in the likelihood of confusion analysis," and even just "[o]ne instance of actual confusion has been deemed sufficient to weigh in favor of finding a likelihood of confusion." *CAE*, 267 F.3d at 685–86. Vacation Rental has submitted employees' declarations detailing interactions with customers who confused Vacation Rental and VacayStay's marks and services. VacayStay objects to this evidence as hearsay. These statements are not hearsay because they are "not offered to prove the truth of the customer's assertion that there is a connection or affiliation between the parties, but only to prove the confused state of mind of the customer." 4 McCarthy on Trademarks & Unfair Competition § 23:15 (4th ed.) (citing *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003–04 (2d Cir. 1997)); *see International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1089 (7th Cir. 1988) ("[T]he letter, phone calls, and inquiries received by the plaintiff, as well as the testimony of plaintiff's employees" were not hearsay and "constitute[d] probative evidence of a likelihood of confusion.").

Vacation Rental's employees have documented several instances where customers or prospective customers (including property suppliers and third-party distribution channels) confused the companies' marks. In October 2015, at an industry exhibition, the chief operations officer of a prospective third-party distributor website confused Vacation Rental's representative (displaying the

26

VAYSTAYS mark) with the VacayStay representative who he had met earlier in the day. [44] ¶ 47. In June 2016, a rental director at Wyndham Hotels & Resorts intended to activate a property for Vacation Rental but accidentally activated it for VacayStay. When the mistake was brought to her attention, the director acknowledged her confusion between VAYSTAYS and VACAYSTAY. [44] ¶ 46. VacayStay argues that the director's mistake could have been merely a typographical error instead of "actual" confusion. But the point is that the director admitted that she accidentally activated a property listing for VacayStay when she had intended to activate it for Vacation Rental. And that same month, another Wyndham director called Vacation Rental to clarify whether he should activate a property for Vacation Rental under the VAYSTAYS account or the VACAYSTAY account. [44] ¶ 46.

"[T]here can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion," and therefore "while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof." *International Kennel*, 846 F.2d at 1089. VacayStay has not come forward with any evidence to refute evidence of actual confusion related to the source of the rival VAYSTAYS and VACAYSTAY marks, as used in connection with the companies' vacation rental businesses. By showing actual confusion, this factor overwhelmingly establishes the likelihood of confusion.

The unrebutted evidence of customers' actual confusion between the VAYSTAYS and VACAYSTAY marks, combined with the similarity of the parties' marks, services, clients, and market use so strongly show likelihood of confusion that the circumstances warrant summary judgment. *See CAE*, 267 F.3d at 686–87.

### C.    A Permanent Injunction Shall Issue

With its motion for summary judgment, Vacation Rental requests a permanent injunction enjoining VacayStay from using the VACAYSTAY mark. The rival mark VACAYSTAY infringes on Vacation Rental's registered VAYSTAYS mark, and 15 U.S.C. § 1116(a) gives courts the power to grant injunctive relief, "according to the principles of equity," to remedy Lanham Act violations.[7] The traditional equitable considerations for a permanent injunction are: (1) the plaintiff has suffered an irreparably injury; (2) remedies at law (e.g., money damages) are inadequate; (3) the balance of harms weighs in favor of an injunction; (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Traditionally, "[a] showing of a likelihood of confusion alone will suffice to support a grant of injunctive relief," *Schutt Mfg. Co. v. Riddell, Inc.*, 673 F.2d 202, 206 (7th Cir. 1982), but the Seventh Circuit has not addressed whether that still rings true in trademark cases after *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).

---

[7] The Illinois Deceptive Trade Practices Act also permits injunctive relief. 815 ILCS 510/3. But under the Illinois Consumer Fraud and Deceptive Business Practices Act, only the Illinois attorney general may seek an injunction against a defendant engaged in an unlawful practice. *Greenberg v. United Airlines*, 206 Ill.App.3d 40, 45 (1st Dist. 1990).

A permanent injunction is warranted. Without a permanent injunction, Vacation Rental will be irreparably injured and will not have an adequate remedy at law. Although Vacation Rental has not shown that it has lost any property supplier customers or consumer bookings as a result of VacayStay's rival mark, that is not required and, indeed, Vacation Rental has shown instances of actual confusion nearly resulting in property suppliers and potential clients placing business intended for Vacation Rental with VacayStay. The damage to the goodwill and prominence of the VAYSTAYS mark through public confusion with the VACAYSTAY mark "is, in itself, an irreparable injury" that cannot be addressed by mere money damages. *Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1332 (7th Cir. 1977). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods," *Processed Plastic Co. v. Warner Communications*, 675 F.2d 852, 858 (7th Cir. 1982), and "the owner of a mark is damaged by a later use of a similar mark which place[s] the owner's reputation beyond its control, though no loss in business is shown." *International Kennel*, 846 F.2d at 1091.

Although an injured plaintiff may be entitled to recover damages, proving monetary loss due to infringement is "notoriously difficult." *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971); *see* 5 McCarthy on Trademarks & Unfair Competition § 30:2 (4th ed.) ("Injury to the trademark owner's reputation and good will as well as to consumer expectations is difficult, if not impossible, to adequately compensate for after the fact."). And money damages

would not adequately remedy loss of future sales from VacayStay's continued use of an infringing mark. *See, e.g., A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208 (3d Cir. 1999) (permitting defendant to continue using its infringing mark, in combination with disclaimer and royalty payment for future lost sales, was an inappropriate remedy). Other equitable considerations also support injunctive relief. While VacayStay will certainly be burdened by discontinuing use of the VACAYSTAY mark, the balance of harms favors Vacation Rental, the priority registrant with its superior rights to the mark. And the public interest is best served by preventing consumer confusion caused by use of an infringing trademark.[8]

Vacation Rental should submit a proposed injunction order in advance of the next status hearing, and VacayStay will have an opportunity to object to its terms.

## IV.    Conclusion

Vacation Rental Partner, LLC's motion for summary judgment, [35], is granted. A status hearing is set for April 12, 2017 at 9:30 a.m.

ENTER:

Manish S. Shah
United States District Judge

Date: 3/28/27

---

[8] VacayStay did not offer any arguments against injunctive relief, other than against summary judgment on Vacation Rental's claims.